# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| NOBLE ENERGY, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. _____ |
| THE CAMERON PARISH SCHOOL BOARD | ) ) | |
| Defendant. | ) ) | |

## COMPLAINT OF NOBLE ENERGY, INC.
## FOR ENFORCEMENT OF CONFIRMATION ORDER

Plaintiff Noble Energy, Inc. ("Noble" or the "Plaintiff"), for its complaint (the "Complaint") against defendant Cameron Parish School Board (the "School Board," or "Defendant"), avers as follows:

## NATURE OF ACTION

1.    In the chapter 11 case of Equinox and Alma,[1] the School Board filed a proof of claim for all obligations Alma owed pursuant to the Cameron Property Lease dated February 3, 1956,[2] which included Alma's obligation to clean up contamination stemming from a blowout that occurred in 1995 and any other contamination.  Pursuant to the order dated August 31, 2000, confirming the Debtors' chapter 11 plan (the "Confirmation Order"),[3] (a) the School Board's

---

[1] The chapter 11 case of Equinox Oil Company, Inc. ("Equinox") and Alma Energy Corporation ("Alma," and together with Alma, the "Debtors") is *In re Equinox Oil Company and Alma Energy Corp.*, Case No. 99-12688 (Bankr. E.D. La.).

[2] Alma held interests in two oil and gas leases originally granted by the School Board to Continental Oil Company and Stanolind Oil and Gas Company in 1948 and 1956, respectively (together, the "Cameron Property Leases"). The School Board did not file a proof of claim for obligations (if any) that arose pursuant to the Cameron Property Lease dated April 8, 1948.

[3] *See* Exhibit A, Confirmation Order.

claim was discharged, (b) Alma's interest in the Cameron Property Lease was sold to a predecessor of Noble free and clear of, *inter alia*, all liens, claims, encumbrances, interests, and successor liability, and (c) Noble's predecessor was granted a release of all the School Board's claims.  The School Board did not object to confirmation and did not appeal the Confirmation Order, which is now final and no longer subject to review or certiorari proceeding.

2.      Nevertheless, on October 3, 2012, the School Board added Noble as a defendant to an action styled *State of Louisiana and the Cameron Parish School Board v. Aspect Energy, LLC, et al.*, No. 10-18673, in the 38th Judicial District Court for the Parish of Cameron, Louisiana (the "State Court Action"),[4] in which the School Board requests a judgment against Noble for claims the Confirmation Order discharges, bars, and enjoins, while qualifying its request to the extent the claims were discharged in bankruptcy.

3.      In the State Court Action, the School Board alleges Noble is the successor in interest to Elysium Energy, LLC ("Elysium"), formerly known as East River Energy Company, LLC ("East River" or the "Purchaser").  As successor to Elysium, the School Board alleges numerous claims against Noble, including (i) tort claims; (ii) claims for breach of contract under the Louisiana Mineral Code and Civil Code; and (iii) claims for breach of implied obligations under the Louisiana Mineral Code and Civil Code, which are all environmental damage claims arising as a result of oil and gas exploration and development done on the Cameron Property (defined below) pursuant to the Cameron Property Leases.

---

[4] Noble was only added to the State Court Action at a later stage.  The State Court Action consists of (i) Petition for Damages, dated May 13, 2010 ("Original Petition"), attached hereto as Exhibit B-1 (without exhibits); (ii) First Amending Petition for Damages, dated February 22, 2011, attached hereto as Exhibit B-2 (without exhibits); and (iii) Plaintiffs' Second Supplemental and Amending Petition, dated October 3, 2012 ("Second Amended Petition"), attached hereto as Exhibit B-3, which adds Noble and another party as additional defendants.

4.      By this complaint, Noble seeks (a) to enforce (i) the discharge pursuant to sections 524 and 1141 of title 11 of the United States Code (the "Bankruptcy Code"), Debtors' Third Amended Joint Plan of Reorganization (the "Plan"), and the Confirmation Order; (ii) the release pursuant to the Plan and Confirmation Order; (iii) the injunction pursuant to the Plan, the Confirmation Order and the Bankruptcy Code; (iv) the sale "free and clear" pursuant to the Bankruptcy Code, APA (defined below), Plan, and Confirmation Order; and (v) the Confirmation Order and the Plan with respect to any cure amounts due on the Cameron Property Leases, or any prepetition amounts due under the Cameron Property Leases; (b) a judgment holding the School Board in contempt of Bankruptcy Code section 524(a) and the Confirmation Order; (c) an injunction pursuant to the All Writs Act, 28 U.S.C.S. § 1651, and the relitigation exception to the Anti-Injunction Act, 28 U.S.C.S. § 2283 enjoining the School Board from prosecuting any and all claims against Noble that are barred by the Confirmation Order and bankruptcy law against Noble's predecessors; and (d) a declaratory judgment confirming that (i) the State Court Action is barred by the discharge in bankruptcy and the Confirmation Order; and (ii) to the extent Louisiana law imposes successor liability for claims discharged and leases sold free and clear, federal bankruptcy law preempts operation of such state law.

## PARTIES

5.      Plaintiff Noble is a Delaware corporation, authorized to do business in the State of Louisiana, and maintains its principal Louisiana business establishment at 5615 Corporate Blvd., Suite 400B, Baton Rouge, LA.

6.      Defendant School Board is an agency of the State of Louisiana maintaining its principal office at 1027 Hwy 384, Grand Lake, Lake Charles, LA 70607, and may be served at its principal office.

## JURISDICTION AND VENUE

7.      This Court has federal question, subject matter jurisdiction over the Complaint pursuant to 28 U.S.C. § 1331 because the relief requested is based on the application of federal bankruptcy law and the Confirmation Order on the School Board's claims against Noble.  As this Complaint relates to the enforcement of the Bankruptcy Code and the Bankruptcy Court's orders, this Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1334.  Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to the controversy between Plaintiff and Defendant occurred within this judicial district.

## FACTUAL BACKGROUND

### A.      The Cameron Property Leases

8.      The State of Louisiana is the owner of certain land located in the Johnson Bayou Field in Cameron Parish and described as Section 16, Township 15 South, Range 14 West (the "Cameron Property").  Original Petition at ¶ 1.

9.      Pursuant to Louisiana law, Defendant School Board has certain rights with respect to the Cameron Property.

10.      In 1948 and 1956, the School Board granted the Cameron Property Leases[5] to Continental Oil Company and Stanolind Oil and Gas Company, respectively, both predecessors in rights to Phillips Petroleum's ("Phillips") rights in the Cameron Property Leases.

11.      Phillips also owned rights pursuant to certain oil and gas leases in Lafourche, Vermillion, and Acadia Parishes in Louisiana (collectively, with Phillips' rights to the Cameron Property Leases, the "Phillips Leases").

---

[5] The Cameron Property Lease that covers the southeast quarter of Cameron Property was recorded on April 8, 1948 under file number 53542 in the conveyance records of Cameron Parish, Louisiana, and the other Cameron Property Lease, which covers the north half and the southwest quarter of the Cameron Property, was recorded on February 21, 1956 under file number 73509 in the conveyance records of Cameron Parish, Louisiana.

12.     In 1994, Phillips entered into an agreement with Alma and Texas Petroleum Investment Company ("TPIC"), who together owned the rights to certain oil and gas leases in Plaquemines Parish in Louisiana (the "Alma/TPIC Leases").  The parties' agreement was a form of exchange agreement whereby Phillips, on the one hand, and Alma and TPIC, on the other hand, agreed to swap their respective interests in the Phillips Leases and the Alma/TPIC Leases (the "Exchange Agreement").

13.     At the closing of the Exchange Agreement transaction, Phillips became the owner of certain oil and gas lease rights under the Alma/TPIC Leases, and Alma and TPIC became the owner of certain oil and gas lease rights under the Phillips Leases, including the Cameron Property Leases.

**B.      Alma filed for bankruptcy and sold all
of its assets to Elysium through
<u>a bankruptcy court-approved "free and clear" sale</u>.**

<u>**The Bankruptcy Case**</u>

14.     On June 10, 1999, Alma commenced a voluntary chapter 11 case with the United States Bankruptcy Court for the Eastern District of Louisiana (the "Bankruptcy Court").  The Alma chapter 11 case was subsequently procedurally and substantively consolidated with the earlier-filed involuntary case against Equinox (collectively, the "Bankruptcy Case").

15.     By order dated August 17, 1999, the Bankruptcy Court established various deadlines for creditors to submit proofs of claim against the Debtors' estates (the "Bar Date Order").  The Bar Date Order established December 15, 1999, as the deadline for holders of prepetition claims to file proofs of claim in the Bankruptcy Case (the "Bar Date").

16.    The School Board had actual knowledge of the Bankruptcy Case and filed a proof of claim (the "Proof of Claim")[6] in the Bankruptcy Case.  The Proof of Claim asserted "obligations under attached contract," which is the Cameron Property Lease dated February 3, 1956.  This is one of the contracts from which the State Court Action claims arise.  The School Board did not file a proof of claim regarding the Cameron Property Lease dated April 8, 1948.

### The Sale Free and Clear

17.    During the course of the Bankruptcy Case, a court-approved auction was held for the sale of Alma's assets, which included rights to the Cameron Property Leases, and East River was recognized as the successful bidder.[7]  On May 3, 2000, Alma and East River executed an asset purchase agreement documenting the asset purchase of Alma's assets (the "APA").

18.    Under the terms of the APA, "[e]xcept for the Assumed Liabilities and Assumed Obligations . . . assumed pursuant to the terms and conditions [of the APA]," East River did not assume "any liability of any of the Debtors, or related to the Assets of any kind or description whatsoever."  APA at ¶ 1.06.

19.    The APA also provides that the assets were being transferred "free and clear" of "mortgages, liens, security interests, pledges, charges, encumbrances, claims, limitations, irregularities, burdens or defects," except for a narrow class of "permitted encumbrances."  APA at ¶ 5.01(a).  Those "permitted encumbrances" were only those regarding "surface operations, pipelines, grazing, logging, canals, ditches, reservoirs, or the like; and easements for streets, alleys, highways, pipelines, telephone lines, power lines, railways and other easements and

---

[6] *See* Exhibit C, Proof of Claim.

[7] *Order Recognizing Successful Bidder, EAST RIVER ENERGY LLC, Pursuant To Order Granting [1258-1] Motion For Approval Of Breakup Fee And Bid Procedure by Alma Energy Corporation, Equinox Oil Company, Inc.*, Case No. 99-12688 (Bankr. E.D. La., June 26, 2000) [Docket No. 1715].

rights-of-way, on, over or in respect of any of the Assets that are customary for properties similar to the Properties."  APA at ¶ 5.01(b).

20.     The APA further provided East River with a release of all liabilities not assumed, including successor liability.  "The Confirmation Order shall include appropriate provisions protecting Buyer against successor liability, except for the Assumed Obligations and the Assumed Liabilities expressly provided for hereunder."  APA at ¶ 8.04(b).

21.     The terms of the APA were approved by the Confirmation Order, which provided that "the assets of the Debtors transferred to East River . . . pursuant to the Plan and the APA shall be free and clear of all liens, claims, interests, rights of others (including, without limitation, preferential rights of purchase) and encumbrances of every kind."  Confirmation Order at ¶ 13.

## The Plan and Confirmation Order

22.     On October 12, 1999, the Debtors filed their chapter 11 plan.  The plan was subsequently amended, and on June 27, 2000, the Third Amended Joint Plan of Reorganization was filed.

23.     The State of Louisiana filed an objection to the Plan, which was resolved and withdrawn prior to confirmation.  The School Board did not object to confirmation of the Plan.

24.     On August 31, 2000, the Bankruptcy Court entered the Confirmation Order, which approved the asset sale from Alma to East River and confirmed the Plan.  The effective date ("Effective Date") of the Plan occurred on March 29, 2001.

25.     The Plan and Confirmation Order provide for a discharge and release from all liabilities and claims against Alma and against each "Exculpated Person," which pursuant to paragraph 1.2.49 of the Plan includes East River.  Paragraph 24 provides, "the Debtors and each

7

Exculpated Person [including the Purchaser] shall be *discharged and released* pursuant to section 1141(d)(1)(A) of the Bankruptcy Code from any and all debts . . . [t]his Order shall be a judicial determination . . . of discharge and termination of all liabilities of and all claims against the Debtors and each Exculpated Person." Confirmation Order at ¶ 24 (emphasis added).

26. The Plan includes an express release and limitation of liability of Exculpated Persons: "The Confirmation Order shall constitute a release of any and all Claims, causes of action, rights and interests against the Exculpated Persons." Plan at ¶ 12.4.

27. The Confirmation Order further provides that the discharge granted to the Debtors extends to Exculpated Persons as well. Confirmation Order at ¶ 24.

28. The Confirmation Order also provides for a permanent injunction in accordance with Bankruptcy Code section 524. The Confirmation Order "operates as a *permanent injunction* against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt or Claim discharged hereby as a personal liability of any of the Debtors or any Exculpated Person . . . ." Confirmation Order at ¶ 28 (emphasis added).

29. The Confirmation Order also permanently enjoins all entities from bringing claims "based upon any document, instrument or act, omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date . . . ." Confirmation Order at ¶ 24.

30. Similarly, the Plan includes a permanent injunction against "all Persons that have held, currently hold or may hold a Claim or other debt or liability against the Estates, or who have held, currently hold or may hold an Equity Interest in the Debtors, from taking any of the following actions on account of such Claim or Equity Interest: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind

8

against the Debtors, current or future property of the Estates or the Liquidating Trust, the Unsecured Creditor Representative or the Liquidating Trust Assets . . . ."  Plan at ¶ 12.2.

31.    In addition, the Plan states that all "property to be sold under the Plan, regardless of whether a Person asserts a joint ownership interest in such property, shall be sold free and clear of any liens, Claims or encumbrances of any type to the fullest extent possible pursuant to 11 U.S.C. sections 363 (including 363(h)) and 1123."  Plan at ¶ 16.2.

32.    The Confirmation Order explains it was aimed at ensuring "East River's peaceful use and enjoyment of the Assets of the Debtors after the Effective Date, free and clear of all liens, Claims and Encumbrances to the fullest extent permitted under the Bankruptcy Code." Confirmation Order at ¶ 37.

33.    Pursuant to the Plan and the Confirmation Order, the Debtors assumed certain executory contracts and oil and gas leases (but only to the extent they were executory contracts) before East River acquired Alma's assets, including the Cameron Property Leases.  As a condition to assuming the executory contracts and leases the Debtors were required to, and did, cure all existing defaults relating thereto.  In fact, the Plan provided the proposed cure amounts for the oil and gas leases to be paid on the Effective Date.  "[T]he amount necessary, as determined by the Bankruptcy Court, or as otherwise agreed by the parties, to cure any existing defaults or arrearages under the assumed oil and gas leases shall be paid on the Effective Date of the Plan or as soon thereafter as reasonably practicable, in full satisfaction, release and discharge of and in exchange for any and all Claims for amounts necessary to cure any existing default or arrearages under the oil and gas leases."  Plan at ¶ 10.11.

34.    Pursuant to the *Third Amended Disclosure Statement, As Modified*, filed on June 27, 2000 (the "Disclosure Statement"), any cure amounts due under the Debtors' oil and gas

leases were treated as "Administrative Expense Claims." Disclosure Statement at ¶ C.1. Any "Administrative Expense Claims" had to be filed no later than 45 days after the Effective Date, and such requests not filed timely were "forever disallowed and barred, and holders of such Claims [are not] able to assert such Claims in any manner against the Debtors, the Estates, the Auction Sale Assets, Remaining Assets or the Liquidating Trust . . . ." Plan at ¶ 2.2.

35.    To the best of Noble's knowledge, the School Board never filed an "Administrative Expense Claim." Further, the School Board never objected to the Plan or to any cure amounts.

36.    The Disclosure Statement also provided that the Plan proponents did not believe the Louisiana oil and gas leases were executory contracts or unexpired leases for purposes of Bankruptcy Code section 365. Disclosure Statement at ¶ C. 1. If the Cameron Property Leases were not executory contracts or unexpired leases for purposes of Bankruptcy Code section 365, then (a) the Cameron Property Leases could not have been assumed or rejected and (b) all claims of the School Board under the Cameron Property Leases were discharged pursuant to the Plan and Bankruptcy Code sections 524 and 1141.

## East River Renamed to Elysium

37.    After the Confirmation Order was entered, East River changed its name to Elysium.

38.    Post-confirmation, on November 28, 2000, Alma and Elysium executed an assignment, bill of sale, and conveyance from Alma to Elysium to accomplish the transfer contemplated by the APA and approved by the Confirmation Order (the "Elysium Assignment"). By its terms, the Elysium Assignment was made subject to the APA, the Plan, and the Confirmation Order.

**C.     Elysium sells its interest in the Cameron
        Property Leases in 2004; Elysium's parent
        thereafter merges with Noble; Noble never owns
        an interest in the Cameron Property Leases.**

39.     In December 2003, Elysium entered into an agreement with Aspect Energy, LLC ("Aspect"), under which Aspect, through its subsidiary Azimuth Energy, LLC ("Azimuth"), acquired all of Elysium's interests in the Cameron Property Leases (the "Azimuth Sale"). The sale to Azimuth closed on January 2, 2004, following which, Elysium no longer held any interest in the Cameron Property Leases.

40.     At the time of the Azimuth Sale, Elysium was a wholly-owned subsidiary of Patina Oil & Gas Corporation ("Patina"). Nearly a year after the Azimuth Sale, Patina merged with Noble Energy Production, Inc., a wholly-owned subsidiary of Noble.

41.     At the time of the merger between Patina and Noble Energy's subsidiary, neither Elysium nor Patina had any interest in the Cameron Property Leases.

**D.     The School Board files the State Court Action,
        asserting discharged claims against Noble.**

42.     On May 13, 2010, the School Board commenced the State Court Action[8] by filing its Original Petition, naming several defendants, including Azimuth and Aspect, but not Noble. On February 22, 2011, the School Board filed its first amending petition for damages. On October 3, 2012, the School Board filed its Second Amended Petition, naming Noble (as

---

[8] The State of Louisiana filed a petition for intervention on March 7, 2011 (the "State Intervention"). The State asserted that the "Attorney General has not consented to, approved, or otherwise authorized a legal services contract between the State . . . and [the attorneys who filed the Original Petition]." State Intervention at ¶ 5. The State Intervention further noted that the School Board was only authorized to file trespass claims in the name of the State, and that "Louisiana law does not authorize the [School Board] to file these non-trespass claims in the name of the State." State Intervention at ¶ 8. The Attorney General intervened in the State Court Action "without adopting the allegations made in the [Original Petition]." State Intervention at ¶ 11. On July 31, 2012, the State filed a motion to dismiss its petition for intervention. The order granting this motion reserved the State's independent authority to bring any civil or administrative enforcement action regarding any environmental harm or other violation at the Cameron Property. In its Second Amended Petition, the School Board appears individually and on behalf of the State of Louisiana. In spite of the fact that the State is named as a plaintiff in the School Board Action, we refer to the School Board only with respect to allegations made therein.

Elysium's purported successor by merger) and another party as additional defendants. The Second Amended Petition expressly incorporates by reference all the allegations set forth in the Original Petition. Second Amended Petition at ¶ 6.17.

43.    Although the Original Petition asserts, in ¶ 48, that the School Board "**does not pursue any . . . claims which have been discharged in bankruptcy**" (emphasis added), the claims asserted in the Second Amended Petition against Noble are based on conduct that occurred prior to the Effective Date of the Debtors' Plan and were discharged in bankruptcy or otherwise released in bankruptcy.

44.    The School Board does not disclose in the State Court Action that it had filed its Proof of Claim and its claims were discharged. All such claims arising through the Effective Date of Alma's Plan were discharged pursuant to the Plan and Confirmation Order.

45.    Upon information and belief, the School Board did not file an "Administrative Expense Claim" asserting cure amounts under the Cameron Property Leases, and these claims were also discharged, disallowed, and barred by the Plan. All the School Board's claims asserted in the State Court Action arising from Alma's acts or omissions prior to the Effective Date of the Plan constitute "claims" within the meaning of Bankruptcy Code section 101(5), which were discharged by operation of Bankruptcy Code section 524(a), the Plan, and Confirmation Order. These claims include, but are not limited to, the following:

(i)    The Original Petition asserts damages for alleged conduct occurring before the Effective Date of the Plan, claiming, among other things, that "defendants are strictly liable to plaintiffs . . . for damages sustained . . . before April 16, 1996. Original Petition, at ¶¶ 19, 30.

(ii)    The Original Petition asserts the defendants' conduct constitutes wanton or reckless disregard for public safety, and invokes former La. Civ. Code art. 2315.3 as a basis for an award of punitive damages arising from such conduct. Original Petition, at ¶ 29. Article 2315.3 was repealed in 1996, and applies only to conduct that occurred prior to its repeal, which was years before the Effective Date.

(iii)    The Original Petition expressly alleges all defendants are joint tortfeasors and are jointly liable, such that any defendant, including Noble, would be liable for damages attributable to acts by any other defendant, including acts that occurred prior to the Effective Date of the Plan. Original Petition, at ¶ 46.

(iv)    The Second Amended Petition asserts claims arising from the blowout of a well (referred to as the "Equinox Blowout") that occurred on February 27, 1995, more than five years prior to the Effective Date of the Plan. Second Amended Petition, at ¶ 6.9 – 6.12, 6.15.

46.    The School Board had actual knowledge of Debtors' Bankruptcy Case and of the Debtors' activity on the Cameron Property. The School Board had the obligation to investigate to discover whether it had any claims relating to contamination by Debtors of the Cameron Property or other claims it could have asserted against the Debtors in the Bankruptcy Case. It is plain from the face of the Second Amended Petition that the School Board knew about and/or had the ability to discover such claims prior to the Effective Date, especially since the "Equinox Blowout" occurred four years before the Debtors' Bankruptcy Case was filed.

47.    Even though the School Board asserts that "[a]lternatively, defendants have engaged in acts that effactually have prevented plaintiffs from availing themselves of the causes

of action alleged,"[9] the events surrounding the "Equinox Blowout" itself would have alerted a reasonable person to ensure that no related claims could be asserted against the Debtors.

48.    The Bankruptcy Code, the confirmed Plan, and the Confirmation Order enjoin and preclude Defendant's claims against Noble in the State Court Action for alleged damages and injunctive relief relating to any alleged prepetition conduct *and* any alleged conduct that occurred postpetition, but prior to the Effective Date of the Plan.

<u>**COUNT I**</u>
**ENFORCEMENT OF THE DISCHARGE**
**PURSUANT TO THE PLAN AND CONFIRMATION ORDER**

49.    Noble repeats and realleges the allegations of the preceding paragraphs 1 through 48 as if fully set forth herein.

50.    A chapter 11 plan discharges any and all debts of the debtor and all property dealt with by the plan that arose prior to confirmation, in accordance with the plan and the Bankruptcy Code.  11 U.S.C. § 1141(d).  Bankruptcy Code sections 1141(c) and (d)(1) provide, in pertinent part:

> (c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors . . .
>
> (d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan –
>
> (A) discharges the debtor from *any debt* that arose before the date of such confirmation, . . . whether or not –
>
> (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title . . . .
>
> 11 U.S.C. §§ 1141(c) and (d)(1)(A)(i) (emphasis added).

---

[9] <u>Exhibit B-1</u>, Original Petition at ¶ 14.

51.    Pursuant to Bankruptcy Code section 1141(c), "except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors . . . ." The Cameron Property Leases were dealt with by the Plan and the Confirmation Order through the Plan's provisions approving and ratifying the APA. Plan at ¶¶ 9.2, 9.3.

52.    The Confirmation Order states that all claims arising prior to the Effective Date are discharged and enjoined. Confirmation Order at ¶ 24.

53.    The Confirmation Order provides, "in accordance with section 1141 of the Bankruptcy Code, the treatment of the Claims afforded under the Plan shall be in exchange for and in complete satisfaction, discharge, release, and termination of, all Claims of any nature whatsoever against the Debtors or any of their assets . . . the Debtors and **each Exculpated Person shall be discharged and released pursuant to section 1141(d)(1)(A) of the Bankruptcy Code from any and all debts** of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code." Confirmation Order at ¶ 24 (emphasis added). The Confirmation Order is a "judicial determination . . . of **discharge and termination of all liabilities of and all Claims against** the Debtors and **each Exculpated Person**." *Id.* at ¶ 24 (emphasis added).

54.    Elysium was an Exculpated Person. Plan at ¶ 1.2.49. Noble is the successor of Elysium. Accordingly, Noble is discharged and released of all the School Board's claims as of the Effective Date of the Plan.

55.    Pursuant to Bankruptcy Code section 1141(d)(1), the Plan and the Confirmation Order, all of the Debtors' "debts" that arose pre-Effective Date were discharged.    The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12).

56.    Accordingly, all pre-Effective Date claims asserted by the School Board against Noble in the State Court Action were discharged.

57.    As set forth in the facts above, pursuant to the injunctions in the Plan, the Confirmation Order, and the Bankruptcy Code, the Defendant violated the discharge injunction contained in the Plan and Confirmation Order by bringing the State Court Action.

### COUNT II
### ENFORCEMENT OF THE RELEASE
### PURSUANT TO THE PLAN AND CONFIRMATION ORDER

58.    Noble repeats and realleges the allegations of paragraphs 1 through 48 as if fully set forth herein.

59.    The Plan and Confirmation Order grant a release to Exculpated Persons, including Elysium.

60.    The Confirmation Order states that "[t]he Debtors and **each Exculpated Person shall be discharged and released pursuant to section 1141(d)(1)(A) of the Bankruptcy Code . . . ."** Confirmation Order at ¶ 24 (emphasis added).

61.    The Plan similarly grants a release and limitation of liability to Elysium: "The Confirmation Order shall constitute **a release** of any and all Claims, causes of action, rights and interests against the Exculpated Persons." Plan at ¶ 12.4 (emphasis added).

62.    Accordingly, the State Court Action violates the releases provided to Elysium as an Exculpated Person in the Plan and Confirmation Order.

<u>**COUNT III**</u>
**ENFORCEMENT OF THE INJUNCTION PURSUANT TO
THE PLAN, THE CONFIRMATION ORDER AND THE BANKRUPTCY CODE**

63.    Noble repeats and realleges the allegations of paragraphs 1 through 48 as if fully set forth herein.

64.    The statutory effect of discharge is provided by Bankruptcy Code section 524(a), entitled "Effect of discharge."

65.    Specifically, Bankruptcy Code section 524(a)(2) provides:

(a) A discharge in a case under this title –

***

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . .

11 U.S.C. § 524(a)(2).

66.    Pursuant to the express terms of Bankruptcy Code section 524(a)(2), the discharge contained in the Plan and Confirmation Order operates as a permanent injunction against the commencement or continuation of any action to recover discharged claims against the Debtors and any Exculpated Person, including Elysium.

67.    Paragraph 24 of the Confirmation Order provides that "every holder of any . . . Claim is **permanently enjoined and precluded** from asserting against . . . [Elysium and its post-closing affiliates] **any other or further Claim** based upon an . . . act, omission, transaction or other activity of any kind or nature that **occurred prior to the Effective Date** . . . ." (emphasis added)

68.    Paragraph 28 of the Confirmation Order provides that "[I]n accordance with Bankruptcy Code section 524, this Order:

a.  voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of any of the Debtors or any Exculpated Person with respect to any debt or Claim discharged hereby; and

b.  operates as a permanent injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt or Claim discharged hereby as a personal liability of any of the Debtors or any Exculpated Person."

69.    The Confirmation Order, consistent with Bankruptcy Code section 524(a), prohibits the assertion of discharged claims against Elysium (and now, its successor, Noble).

70.    The claims asserted by the School Board fall well within the definition of claim pursuant to Bankruptcy Code section 101(5), and were thus discharged.

71.    By bringing the State Court Action, the Defendant is in violation of the injunction contained in the Plan and Confirmation Order.

**COUNT IV**
**ENFORCEMENT OF THE SALE "FREE AND CLEAR" PURSUANT TO**
**THE BANKRUPTCY CODE, APA, PLAN AND CONFIRMATION ORDER**

72.    Noble repeats and realleges the allegations of paragraphs 1 through 48 as if fully set forth herein.

73.    The Plan provides that "[a]ll property to be sold under the Plan, regardless of whether a Person asserts a joint ownership interest in such property, shall be sold free and clear of any liens, Claims or encumbrances of any type to the fullest extent possible pursuant to 11 U.S.C. sections 363 (including 363(h)) and 1123."  Plan at ¶ 16.2.

74.    The Confirmation Order provides that "the assets of the Debtors transferred to East River or the Liquidating Trust pursuant to the Plan and the APA shall be free and clear of

18

all liens, claims, interests, rights of others . . . and encumbrances of every kind."  Confirmation Order at ¶ 13.

75.     Pursuant to the APA, Elysium (f/k/a East River) only assumed those "duties and obligations as the owner of the Assets which accrue or arise from and after the Closing Date [Effective Date]." APA at ¶ 8.03(b).

76.     Pursuant to the APA the Cameron Property Leases were sold to Elysium free from successor liability:   "The Confirmation Order shall include appropriate provisions protecting Buyer against successor liability, except for the Assumed Obligations and the Assumed Liabilities expressly provided for hereunder . . . ."  APA at ¶ 8.04(b).  The claims asserted in the State Court Action were not Assumed Obligation or Assumed Liabilities under the APA.

77.     The claims asserted in the State Court Action arose *prior* to the Effective Date and were discharged.

78.     By bringing the State Court Action, Defendant breached the "free and clear" sale provisions contained in the APA, Plan and Confirmation Order.

### <u>COUNT V</u>
**ENFORCEMENT OF THE CONFIRMATION ORDER AND PLAN WITH RESPECT TO ANY CURE AMOUNTS DUE ON THE OIL AND GAS LEASES, OR ANY PREPETITION AMOUNTS DUE UNDER THE CAMERON PROPERTY LEASES**

79.     Noble repeats and realleges paragraphs 1 through 48 as if fully set forth herein.

80.     Pursuant to the Plan, any cure amounts for assumed contracts were paid, pursuant to, among other things, timely filed objections of a counterparty to an executory contract, on the Effective date or soon thereafter "in full satisfaction, release and discharge of and in exchange for any and all Claims for amounts necessary to cure any existing defaults or arrearages . . . ." Plan at ¶¶ 10.10 and 10.11.

81.    Pursuant to the Disclosure Statement, ¶ C.1, any cure amounts due under the Debtors' oil and gas leases were treated as "Administrative Expense Claims," which had to be filed no later than 45 days after the Effective Date.  Such requests that were not filed timely were "forever disallowed and barred, and holders of such Claims [are no longer] able to assert such Claims in any manner against the Debtors, the Estates, the Auction Sale Assets, Remaining Assets or the Liquidating Trust . . . ."  Plan at ¶ 2.2.

82.    Upon information and belief, the School Board never filed an "Administrative Expense Claim."  Nor did the School Board file any objection regarding the cure amounts.

83.    To the extent the Cameron Property Leases were executory contracts or unexpired leases at the time of confirmation, any existing defaults or arrearages were discharged pursuant to the Plan.

84.    To the extent the Cameron Property Leases were not executory contracts or unexpired leases for purposes of Bankruptcy Code section 365, (a) the Cameron Property Leases could not have been assumed and (b) all the School Board's claims as defined in Bankruptcy Code section 101(5) were discharged.

<u>COUNT VI</u>
**DEFENDANT IS IN CIVIL CONTEMPT OF**
**BANKRUPTCY CODE SECTION 524(a)(2) AND THE CONFIRMATION ORDER**

85.    Noble repeats and realleges paragraphs 1 through 48 as if fully set forth herein.

86.    By bringing the State Court Action, the School Board breached and it continues to breach the permanent discharge injunction of Bankruptcy Code section 524(a)(2) and the Confirmation Order.

87.    While the School Board's Second Amended Petition provides it does not request damages for claims discharged in bankruptcy, it (a) expressly requests damages for acts and

omissions giving rise to claims that were discharged in bankruptcy, and (b) expressly requests damages for acts and omissions that were released as against Elysium as an Exculpated Party.

## COUNT VII
### INJUNCTION AGAINST THE SCHOOL BOARD ENJOINING FURTHER PROCEEDINGS IN STATE COURT UNDER THE ALL WRITS ACT, 28 U.S.C.S. § 1651, AND THE RELITIGATION EXCEPTION TO THE ANTI-INJUNCTION ACT, 28 U.S.C.S. § 2283

88.    Noble repeats and realleges paragraphs 1 through 48 as if fully set forth herein.

89.    The Bankruptcy Court issued the Confirmation Order, and the Plan became effective on the Effective Date.

90.    The School Board did not object to confirmation.  The Confirmation Order became final and no longer subject to review or certiorari proceeding and is binding on the School Board.

91.    Thus, any proceeding (including state court proceedings) seeking to relitigate or reopen issues covered by the Confirmation Order should be enjoined.

92.    Pursuant to the All Writs Act , 28 U.S.C. §1651, this court has power to issue all writs, including an injunction, not specifically provided for by statute, which may be necessary for the exercise of its jurisdiction.

93.    The relitigation exception to the Anti-Injunction Act, 28 U.S.C. § 2283 does not prevent this court from issuing such injunction.

## COUNT VIII
### DECLARATORY JUDGMENT THAT THE CLAIMS PURSUED BY THE SCHOOL BOARD AGAINST NOBLE WERE DISCHARGED BY THE CONFIRMATION ORDER AND THE PLAN

94.    Noble repeats and realleges paragraphs 1 through 48 as if fully set forth herein.

95.    The School Board filed a proof of claim in the Debtors' Bankruptcy Case.

96.     The claims asserted in the State Court Action arose when the School Board (and/or the State of Louisiana) should have known/could tie the Debtors to the alleged hazardous release, or contamination on the Cameron Property.

97.     The "Equinox Blowout" occurred in 1995, prior to the Debtors' bankruptcy cases, which commenced in 1999.  Thus, the Defendant's claims arose no later than in 1995.

98.     The School Board had due notice of the Bankruptcy Case, and filed a Proof of Claim.

99.     The claims alleged in the State Court Action arose prepetition and were discharged by the Bankruptcy Code, the Confirmation Order and the Plan.

100.     The School Board did not object to the Plan or Confirmation Order, and is bound by the Confirmation Order, the Plan and the Bankruptcy Code.

101.     Such declaratory relief is in accordance Rule 57 of the Rules of Civil Procedures and with 28 U.S.C 2201.

### <u>COUNT IX</u>
**DECLARATORY JUDGMENT THAT TO THE EXTENT LOUISIANA LAW IMPOSES SUCCESSOR LIABILTIY FOR CLAIMS DISCHARGED AND LEASES SOLD FREE AND CLEAR, FEDERAL BANKRUPTCY LAW PREEMPTS OPERATION OF SUCH STATE LAW**

102.     Noble repeats and realleges paragraphs 1 through 48 as if fully set forth herein.

103.     The APA made clear that the Cameron Property Leases were sold free and clear with no obligations, other than those obligation explicitly assumed.  Thus, East River (which subsequently changed its name to Elysium) purchased the Cameron Property Leases free from successor liability:  "The Confirmation Order shall include appropriate provisions protecting Buyer against successor liability, except for the Assumed Obligations and the Assumed Liabilities expressly provided for hereunder."  APA at ¶ 8.04(b).

104.    Pursuant to the Bankruptcy Code, including Bankruptcy Code sections 1123 and 1141, the Cameron Property Leases were transferred free of any liability, including successor liability, to Elysium.

105.    The Plan further provides that "[A]ll property to be sold under the Plan, regardless of whether a Person asserts a joint ownership interest in such property, shall be sold free and clear of any liens, Claims or encumbrances of any type to the fullest extent possible **pursuant to 11 U.S.C. sections 363 (including 363(h)) and 1123**.  Plan at ¶ 16.2.  (emphasis added)

106.    To the extent the provisions of the Louisiana Mineral Code, or Civil Code, or jurisprudence impose successor liability for claims that were discharged and claims arising from leases that were sold free and clear of such claims, Bankruptcy Code sections 363(f), 524, 1123 and 1141 preempt operation of the state law because the state law would otherwise prevent enforcement of the discharge and distribution scheme in the Bankruptcy Code.

WHEREFORE, Noble respectfully requests that this Court enter an order (i) enforcing the discharge pursuant to Bankruptcy Code sections 524 and 1141, the Plan, and the Confirmation Order; (ii) enforcing the release pursuant to the Plan and Confirmation Order; (iii) enforcing the injunction pursuant to the Plan, the Confirmation Order and the Bankruptcy Code; (iv) enforcing the sale "free and clear" pursuant to the Bankruptcy Code, APA, Plan, and Confirmation Order; (v) enforcing the Confirmation Order and the Plan with respect to any cure amounts due on the Cameron Property Leases, or any prepetition amounts due under the Cameron Property Leases; (vi) holding the School Board in contempt of Bankruptcy Code section 524(a) and the Confirmation Order; (vii) enjoining the School Board from prosecuting any and all claims against Noble that are barred by the Confirmation Order and bankruptcy law against Noble's predecessors pursuant to the All Writs Act, 28 U.S.C.S. § 1651, and the relitigation exception to the Anti-Injunction Act, 28 U.S.C.S. § 2283; (viii) declaring that the State Court Action is barred by the discharge in bankruptcy and the Confirmation Order; (ix) declaring that to the extent Louisiana law imposes successor liability for claims discharged and leases sold free and clear, federal bankruptcy law preempts operation of such state law; (x) awarding Noble its costs of suit; and (xi) granting such other relief as may be just and proper.

Dated:   May 3, 2013

_____/s/ Howard Shapiro_____
Howard Shapiro, T.A. (La. Bar No. 11968)
Michael D. Spencer (La. Bar No. 27649)
PROSKAUER ROSE LLP
650 Poydras Street
Suite 1800
New Orleans, Louisiana 70130-6146
Telephone:  (504) 310-4088
Facsimile:  (504) 310-2022

-and-

Martin J. Bienenstock
Michael P. Kessler
Philip M. Abelson
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900

-and-

Sean Gorman
Chris Lacy
AHMAD, ZAVITSANOS, ANAIPAKOS,
ALAVI & MENSING P.C.
1221 McKinney Suite 3460
Houston, Texas 77010
Telephone:  (713) 655-1101
Facsimile:  (713) 655-0062

*Counsel to Plaintiff Noble Energy, Inc.*