EXHIBIT A – PART 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE | § | **DOCKETED** |
| EQUINOX OIL COMPANY, INC.<br>Taxpayer I.D. No. 73-1197572 | § § § § | AUG 31 2000    CASE NO. 99-12688 |
| ALMA ENERGY CORP.,<br>Taxpayer I.D. No. 48-1065085 | § § § | WARREN A. GUNTZ, JR., CLERK<br>UNITED STATES BANKRUPTCY COURT CASE NO. 99-13071<br>NEW ORLEANS, LA.    (CHAPTER 11s) |
| DEBTORS. | § § | (JOINTLY ADMINISTERED)<br>(JUDGE BROWN) |

### ORDER CONFIRMING DEBTORS' THIRD AMENDED JOINT PLAN OF REORGANIZATION AS MODIFIED AND SUPPLEMENTED AND JOINED BY BNP PARIBAS, COMERICA BANK - TEXAS AND DEN NORSKE BANK, ASA

On August 14, 2000, a hearing was held concerning confirmation (the "Confirmation Hearing") of the Debtors' Third Amended Joint Plan of Reorganization as Joined by BNP Paribas, Comerica Bank - Texas and Den Norske Bank, ASA (hereinafter, the "Third Plan"), as subsequently modified by that certain Debtors' First Modification Under 11 U.S.C. § 1127(a) of Debtors' Third Amended Joint Plan of Reorganization as Joined by BNP Paribas, Comerica Bank - Texas and Den Norske Bank, ASA, (collectively, the "Plan"). On the basis of the record of these Bankruptcy Cases,[1] including the evidence presented at the Confirmation Hearing, the Court hereby **ORDERS THAT:**

1. The Plan complies with all applicable provisions of the Bankruptcy Code and applicable Bankruptcy Rules relating to confirmation, including those provisions contained in

---

[1] All capitalized terms used herein shall have the meaning ascribed to them in the Plan, Disclosure Statement, and the Asset Purchase Agreement.

Section 1129(b) pertaining to "cram down." The Plan and all provisions thereof (including the terms of the Asset Purchase and Sale Agreement ("APA")), and the Stipulation with the Debtors, East River and the Louisiana State Mineral Board are hereby approved and confirmed in all respects, including, without limitation, any filing deadlines specified in the Plan. All conditions precedent to confirmation of the Plan pursuant to section 11.1 have been satisfied or waived. Those creditors whose treatment under the Plan varied depending upon which election was selected, including creditors in Classes 2, 4 and 5, shall be governed by the Notice filed of record as to the treatment options selected by the Debtors. All transactions contemplated under the APA are authorized and approved. The Debtors' First Non-Material Modification filed August 14, 2000 and the Supplement to the Third Amended Disclosure Statement, as Modified, in Support of the Debtors' Third Amended Joint Plan of Reorganized, as Modified and Supplemented, as Joined by BNP Paribas, Comerica Bank-Texas and Den norske Bank, ASA are also approved. The Plan has been restated and amended to conform to all applicable agreements and stipulations announced on the record. A true and correct copy of the Plan, as confirmed, is attached hereto as Exhibit "A".

2. The Debtors' estates are hereby substantively consolidated pursuant to section 9.1 of the Plan.

3. The record of the Confirmation Hearing is closed.

4. Various Objections were timely filed to Confirmation of the Plan:

a. Objection by Texaco Exploration and Production Inc. (Docket No. 1830)
b. Objection of Woodlands Office Equities 95, Ltd. (Docket No. 1847)
c. Objections of the United States on behalf of the Coast Guard, Department of the Interior and National and Atmospheric Administration. (Docket No. 1867)
d. United States Objection on behalf of Department of Interior, Minerals Management Service (MMS). (Docket No. 1863)
e. Limited Objection by PHH Vehicle Management Services. (Docket No. 1868)

 f. Objections of Lexington Insurance Company. (Docket No. 1858)
 g. Objection by Apache Corporation. (Docket No. 1839)
 h. Objection of Chevron U.S.A. (Docket No. 1853)
 i. Objection by Weatherford U.S., L.P. (Docket No. 1866)
 j. Objection of Philip Services/Louisiana, Inc. (Docket No. 1838)
 k. Objection of Energy Resource Technology, Inc. (Docket No. 1860)
 l. Objection by Phillip N. Asprodites, Commissioner of Conservation, State of Louisiana. (Docket No. 1832)
 m. Objection by Quality Wireline Service, Quality Pipeline & Construction, Chris Hanson d/b/a Chris' Exxon Marine Service. (Docket No. 1840)
 n. Objection by the State of Louisiana, Department of Natural Resources, Office of Mineral Resources and State Mineral Board. (Docket No. 1844)
 o. Objection of Shell Western Exploration & Production, Inc. and Shell Western Frontier Oil and Gas Inc. (Docket No. 1854)
 p. Objection of Antill Pipeline Construction Company. (Docket No. 1861)
 q. Objection of Montgomery County M.U.D. #6. (Docket No. 1791)
 r. Objection by the State of Louisiana, Department of Natural Resources, Office of Mineral Resources and State Mineral Board. (Docket No. 1844)

Pursuant to agreements and stipulations read into the record, the objections of the following have been resolved and withdrawn:

 a. Objection by Phillip N. Asprodites, Commissioner of Conservation, State of Louisiana
 b. Objection by Quality Wireline Service, Quality Pipeline & Construction, Chris Hanson d/b/a Chris' Exxon Marine Service
 c. Objection by the State of Louisiana, Department of Natural Resources, Office of Mineral Resources and State Mineral Board
 d. Objection of Shell Western Exploration & Production, Inc. and Shell Western Frontier Oil and Gas Inc.
 e. Objection of Antill Pipeline Construction Company
 f. Objection by Texaco Exploration and Production Inc.
 g. Objection by Apache Corporation
 h. Objection of Chevron U.S.A.
 i. Objection of Philip Services/Louisiana, Inc.
 j. Objection of Parker Drilling
 k. Objections of Lexington Insurance Company
 l. Limited Objection of National Union
 m. Limited Objection by PHH Vehicle Management Services.

A partial resolution of the objection by Energy Resource Technology, Inc. ("ERT") was read into the record involving an agreement with East River which agreement will be subject to a separate letter agreement or stipulation between East River and ERT. A partial resolution of the MMS' objection was read into the record involving an agreement with the Debtors and East River. All remaining objections are overruled.

5. Pending the occurrence of the Effective Date, the Debtors shall be subject to all of the provisions of the Bankruptcy Code, except as otherwise specifically provided in the Plan, the APA, or this Order.

   a. The Debtors are authorized to operate and manage their businesses and assets in compliance with the terms and provisions of the Plan, the APA and the Bankruptcy Code pending the occurrence of the Effective Date.
   b. All property owned by the Debtors to be transferred or otherwise dealt with in the Plan shall remain property of the Debtors' bankruptcy estates, and such bankruptcy estates shall continue until the occurrence of the Effective Date.
   c. All property owned by Affiliates of the Debtors to be transferred or otherwise dealt with in the Plan shall remain property of the respective entity until the occurrence of the Effective Date.
   d. Unless otherwise ordered by the Court, all injunctions or stays provided for in the Bankruptcy Cases pursuant to Sections 105 or 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date shall continue in effect until the Effective Date, provided however, that this provision shall not affect prior orders of this Court, if any, granting relief from the stay or as otherwise ordered by the Court.
   e. Notwithstanding Confirmation of the Plan, this Court retains jurisdiction as is provided in Article XV, Section 15.01 of the Plan.

   6.a. All agreements contemplated by the Plan and the APA are hereby approved in all respects, including, without limitation, the compromise with (i) the Bank Group and (ii) the Motion to Approve Compromise with Affiliated Entities, E&B Natural Resources Management Corporation ("E&B"), Lower Lafourche, LLC ("LLF") and L&G Petroleum Company (the "Affiliates' Compromise"). With respect to the Affiliates' Compromise, in the event the mineral leases acquired by E&B from Shell Western E&P, Inc. ("SWEPI") and Shell Frontier Oil & Gas Inc. ("SFOGI") are transferred to Alma pursuant to this Order, then Alma shall assume and be liable for all obligations of E&B to SWEPI or SFOGI (as the case may be) under the applicable Oil and Gas Purchase and Sale Agreements affecting the mineral leases

-4-

       transferred to the Debtors. These assumed obligations shall include but are not limited to the respective Sinking Fund Trust Agreements. These assumed obligations of the Debtors (i) shall be an administrative expense of these bankruptcy cases pursuant to section 503(b) of the Bankruptcy Code and (ii) all existing defaults shall be cured upon the Effective Date. The curing of the defaults shall be either by the payment of cash into said escrow accounts or the issuance of bonds and/or letters of credit by entities in the form and substance acceptable to SWEPI and SFOGI in their sole discretion. In the absence of the agreement of the parties, the amount of the cure shall be determined by this Court prior to the Effective Date.

b. In the event the E&B oil and gas properties are not transferred to Alma but instead are directly assigned by E&B to East River, then East River shall cure on the Effective Date all defaults with respect to the sinking funds as provided above. Upon the Effective Date, East River shall assume and be liable for all obligations of E&B to SWEPI or SFOGI (as the case may be) under the applicable Oil and Gas Purchase and Sale Agreement affecting the mineral leases. These assumed obligations shall include but are not limited to the respective Sinking Fund Trust Agreements. This Order shall not constitute a discharge or satisfaction of such obligations.

c. In the event the E&B oil and gas properties are not transferred but remain the property of E&B, all parties reserve all rights, claims and defenses in connection with the Oil and Gas Purchase and Sale Agreements.

7. With regard to the mineral leases located in Lake Washington acquired by Alma from SWEPI, in the event of a closing by East River, the default under the Purchase and Sale Agreement affecting these mineral leases shall be cured by East River on the Effective Date in accordance with the provisions of ¶ 6 above. Thereafter East River shall assume and be liable for the obligations under the applicable Purchase and Sale Agreement.

8. Per the agreement between the Debtors, East River and the Department of Interior, Minerals Management Service ("MMS"), if the sale of the Debtors' assets to East River is consummated, then:

a. Alma acknowledges all its rights, titles, interests and obligations, contingent or otherwise, under the Ship Shoal leases as unaffected by the bankruptcy;

b. East River agrees to acquire all of Alma's rights, titles, interests and obligations under the Ship Shoal leases subject to MMS approval;

-5-

  c. Upon Plan confirmation, East River will apply to MMS to qualify as a record title interest holder pursuant to MMS regulations; and

  d. After closing, East River will submit appropriate documentation to MMS for approval of the transfer of Alma's rights, titles, interests and obligations to East River.

9. In accordance with Section 1142 of the Bankruptcy Code, the Debtors, the Bank Group, East River, the Unsecured Creditors' Representative and/or the Liquidating Trustee and any and all other parties-in-interest herein are authorized and directed, without the necessity of any further corporate action or other approval, to immediately take any action necessary or appropriate to implement, effectuate, and consummate the Plan and any transactions contemplated thereby or by this Order in accordance with their respective terms, including, without limitation, any document, certificate, agreement, or instrument and the transfer of any security.

10. Any of the Chief Executive Officer, the President, any Vice President, and the Secretary of the Debtors or any Affiliate is authorized and designated, upon the entry of this Order, to execute, on behalf of the Debtors, any related agreements, certificates, instruments, or documents that such officer deems necessary or advisable in order to consummate and effectuate the Plan and the transactions contemplated thereby as of the time they are to become effective. No further approval of the Board of Directors or shareholders of the Debtors or Affiliates shall be required with respect to the implementation and consummation of the Plan or the transactions contemplated by the Plan and the APA.

11. The Debtors are authorized, directed, and instructed to take all steps necessary to implement the terms of the Plan and the APA, in accordance with the terms thereof both prior to and as of the Effective Date.

Case 2:13-cv-02619-KDE-DEK   Document 1-3   Filed 05/03/13   Page 8 of 11

Case 99-12689   Doc 1958   Filed 08/31/00   Entered 08/31/00 10:27:00   Converted from BANCAP   Page 7 of 19

12. On the Effective Date, the Bank Group Consideration will be paid to the Bank Group, and subject to the Reserve provisions set forth in the Plan, the remaining consideration will be distributed to Creditors and Interest Holders in accordance with the terms of the Plan.

13. Except as otherwise provided in the Plan, the assets of the Debtors transferred to East River or the Liquidating Trust pursuant to the Plan and the APA shall be free and clear of all liens, claims, interests, rights of others (including, without limitation, preferential rights of purchase) and encumbrances of every kind.

14. The Unsecured Creditors' Representative shall make the Plan distributions from the Unsecured Creditors Reserve to the Holders of the Allowed Class 7 Unsecured Claims pursuant to the provisions of the Plan.

15. Except for those contracts and agreements that have either already been assumed or rejected, those Executory Contracts and Unexpired Leases proposed to be assumed and assigned to East River or the Liquidating Trust pursuant to the Plan are ordered assumed and assigned to East River or the Liquidating Trust, as appropriate, as of the Effective Date. Those Executory Contracts and Unexpired Leases proposed to be rejected pursuant to the Plan and the Section 365 Notices are ordered rejected, as of the Effective Date. East River and the Liquidating Trust have provided adequate assurance of future performance of all Executory Contracts and Unexpired Leases being assumed and assigned to it.

16. Except with respect to the cure amount listed for PHH Vehicle Management Services, the cure amounts listed in the Disclosure Statement exhibits for the assumed and assigned Executory Contracts and Unexpired Leases shall be binding and shall be paid in cash in full on the Effective Date, or as soon as practicable thereafter, to the respective parties owed such amounts, in accordance

with section 365(b)(1) of the Bankruptcy Code and Article X of the Plan, except as otherwise agreed.

17. Unless otherwise agreed to, in writing, between Texaco Exploration & Production, Inc., ("TEPI"), the Debtors and East River, with respect to TEPI, the following stipulation as to the cure of the assumed and assigned contracts arising from the West Columbia Field, Brazoria County, Texas, is approved as follows:

a. The Debtors shall, as part of the assumption of the Purchase and Sale/Exploration Agreement, dated effective January 1, 1997 (the "*Exploration Agreement*") and the Model Form Operating Agreement (the "*Operating Agreement*") (together, the "*Agreements*") provide for the cure of the Agreements. The cure obligation that is provided under both the Operating Agreement and the Exploration Agreement will be satisfied by the terms of this Order. The Debtors shall provide for the cure of the Exploration Agreement by making all reasonable efforts to spud the Initial Test Well (as defined under the terms of the Exploration Agreement) by September 1, 2000. The Debtors will proceed to drill the Initial Test Well to Casing Point pursuant to the terms of the Exploration Agreement. The outside date to complete, to Casing Point, the Initial Test Well, will be October 15, 2000. However, if the Debtors are unable to obtain a rig to drill the Initial Test Well, then the Debtors may provide a notice to TEPI by September 15, 2000, which notice will allow TEPI to obtain a rig, if possible. If neither party is able to commence drilling by October 15, 2000, the final date for the completion of the Initial Test Well to Casing Point will be extended by 30 days, a one time extension to November 15, 2000. Such deadlines are subject to the force majeure provisions contained in the Operating Agreement. If the terms of the cure concerning drilling the Initial Test Well cannot be reached and/or are breached by the Debtors, then the terms of this agreement are released and waived;

b. The Debtors will, as part of the agreement provided herein, submit the cost incurred to drill to Casing Point the Initial Test Well, and no later than 30 days after submission of the incurred costs to TEPI, TEPI will release the funds that it is now holding under the Operating Agreement, in the approximate amount of $400,000, in a jointly payable check to the Debtors and its vendors, to pay the invoices for the drilling costs. To the extent the drilling costs, expenses and legal fees of TEPI result in obligations less than the amount of money that TEPI is holding, TEPI will turn over the excess funds to the Debtors. The Bank Group, as announced to the Court at the Confirmation Hearing, has agreed to the use of cash collateral funds to the extent of any excess costs to drill the well to Casing Point, if any, in excess of the funds now held by TEPI. The Debtors will represent, as part of the release of the funds from TEPI to the Debtors, that the Debtors have authorization under the cash collateral agreement with the Bank Group, as well as

-8-

      access to the funds, to pay all other costs to the extent they exceed the monies currently held or held at the time of such representation to TEPI;

c. as part of the cure obligation, TEPI will submit its attorneys fee claims to this Court for approval as to whether they are reasonable or not, if the amount of those fees cannot be agreed to between the Debtor and TEPI. TEPI will submit its invoices from its counsel to the Debtors under confidentiality agreement;

d. The Debtors will release any claims that they have against TEPI under Section 11.2(a) of the Exploration Agreement for any 3D seismic costs;

e. That East River, upon consummation of the sale contemplated by the Plan, will assume the existing bond for the West Columbia plugging and abandonment obligations as provided in the Asset Purchase and Sale Agreement between the Debtors and East River;

f. The Debtors' claims against TEPI, concerning the Exploration Agreement, will be resolved by agreement or by submission to the Court. The Debtors have submitted to TEPI two invoices, in an amount of approximately $90,000, for TEPI's share of leases that were contributed into the lease package as part of the Exploration Agreement. The obligations of TEPI to the Debtors will be resolved as part of an accounting that will be provided to TEPI of the well costs, and any amounts that are owed by TEPI under the Exploration Agreement will be paid as part of that accounting. If the parties cannot resolve the amount owed by TEPI to the Debtors, then the Court will determine the amount owed under the two invoices submitted by TEPI;

g. The Debtors and TEPI will, with the exclusion of the terms provided herein, enter into mutual releases. The Debtors will also withdraw their Motion for Turnover of the monies held by TEPI. TEPI will amend its proofs of claim to withdraw and eliminate any claims related to the West Columbia Field and the Agreements, the Operating Agreement and the Exploration Agreement. TEPI will modify and amend its proofs of claim to only assert an unsecured claim as to Lake Washington relating to any potential plugging and abandonment obligations of the Debtors. The Debtors have filed an objection to the proofs of claim which includes an objection to the contingent claims and unliquidated claims for plugging and abandonment by TEPI, which matter will not be resolved by this Order. The claim as to Lake Washington will be the only remaining matter before the Court, to the extent TEPI wishes to pursue that claim. The claim would solely be a non-priority unsecured claim and there will be no administrative claim asserted by TEPI; and

h. The Debtors will not object to TEPI's recoupment of any pre-petition costs as provided under the Operating Agreement. Any obligations that might relate to recoupment for drilling cost are provided in the agreement herein. TEPI will also withdraw its Objection, which was filed relating to the right of first refusal, and withdraws any objections that relate to the Plan on those grounds.

18. **All requests for payment or any other means of preserving and obtaining payment of Administrative Expense Claims that have not been paid, released or otherwise settled, including all requests for payment of Professional Claims, other than Ordinary Course**

Administrative Claims, must be filed with the Bankruptcy Court and served upon the Liquidating Trustee by the earlier of (i) forty-five (45) days after the Effective Date; or (ii) any applicable bar date established by the Bankruptcy Court and noticed separately by the Liquidating Trustee. Any request for payment of Administrative Expense Claims that is not timely filed as set forth above will be forever disallowed and barred, and holders of such Claims will not be able to assert such Claims in any manner against the Debtors, the Estates, the Auction Sale Assets, Remaining Assets or the Liquidating Trust, provided, however, that Ordinary Course Administrative Claims shall be paid in the ordinary course of the Debtors' business and, if applicable, pursuant to the terms agreed upon by the Debtors and such Creditors.

19. Any and all proofs of claim arising out of the rejection of an Executory Contract or Unexpired Lease pursuant to Article X of the Plan and the Section 365 Notice must be filed within thirty (30) days after the Effective Date. Any holder of a Claim arising out of the rejection of an Executory Contract or Unexpired Lease who fails to file a proof of claim within such time shall be forever barred, estopped, and enjoined from asserting such Claim against the Debtors, their Estates, East River or the Unsecured Creditors Fund.

20. At any time prior to or after the Effective Date, the Debtors, Liquidating Trustee (if applicable) or the Unsecured Creditors' Representative may seek the estimation of a Disputed Claim in accordance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules for the purpose of determining the Reserve under Article III of the Plan.

21. Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of securities or other property under the Plan; the creation, transfer, filing, or recording