EXHIBIT B-1

*Return date stamped*

RECEIVED

MAY 14 2010

RECEIVED & FILED

2010 MAY 13 PM 3 47

CARL E. BROUSSARD
CLERK OF COURT
CAMERON PARISH, LA.

### 38TH JUDICIAL DISTRICT COURT

### PARISH OF CAMERON

DOCKET NO. 10-18673        DIV.

### STATE OF LOUISIANA and THE CAMERON PARISH SCHOOL BOARD
### vs.
### ASPECT ENERGY, LLC, AZIMUTH ENERGY, LLC, CONOCOPHILLIPS COMPANY, DUNDEE PETROLEUM, INC.

FILED _____      DTY CLERK _____

---

### PETITION FOR DAMAGES

COMES NOW plaintiff, the State of Louisiana, to respectfully allege that:

1.

Plaintiff owns the following described property located in Cameron Parish, Louisiana in the Johnson Bayou Field:

    (a)      Section 16, Township 15 South, Range 14 West.

This property has been contaminated or otherwise damaged by defendants' oil and gas exploration and production activities.

2.

Plaintiff is the State of Louisiana. The Cameron Parish School Board is a public body maintaining its principal office at 1027 Hwy 384, Grand Lake, Lake Charles, LA 70607.

Louisiana law grants to the school boards of the State of Louisiana the right to authorize suit for damages to sixteenth section school lands, provided such suit is brought in the name of the State. The present action is a claim for damages for sixteenth section school lands in Cameron Parish which has been authorized by the Cameron Parish School Board. It is believed that all of Section 16 described in the foregoing paragraph should be deemed "school lands."

3.

Plaintiff is: (1) lessors, assignees, or third-party beneficiaries of certain mineral and/or surface leases between plaintiffs and defendants, and/or (2) successors in interest to certain mineral and/or surface leases between plaintiffs and defendants; and/or (3) owners of property contaminated by the oil and gas activities conducted or controlled by one or more of the defendants; and/or (4) successors in interest to, or the assigns of, the owners of property contaminated by the oil and gas

activities conducted or controlled by one or more of the defendants; and/or (5) servitude owners who have the right to sue for remediation damages under the Mineral Code; and/or (6) parties who possess the right of action to file this lawsuit under Louisiana law.

4.

Made defendants are the following parties:

a.  **Aspect Energy, LLC,** a foreign corporation authorized to do and doing business in the State of Louisiana with a principle place of business in Baton Rouge, Louisiana;

b.  **Azimuth Energy, LLC,** a foreign corporation authorized to do and doing business in the State of Louisiana with a principle place of business in Baton Rouge, Louisiana.

c.  **ConocoPhillips Company successor to Continental Oil Company** a foreign corporation authorized to do and doing business in the State of Louisiana with its principle place of business in Baton Rouge, Louisiana.

d.  **Dundee Petroleum, Inc. ,** a foreign corporation doing business in the State of Louisiana with a registered agent as Royce A. Scott, 419 Graham Street, Tuscola, TX 79562.

e.  **ConocoPhillips Company successor in interest to Phillips Oil Company that merged with General American Oil Company,** a foreign corporation authorized to do and doing business in the State of Louisiana with its principle place of business in Baton Rouge, Louisiana.

f.  **ConocoPhillips Company successor to Phillips Petroleum Company,** a foreign corporation authorized to do and doing business in the State of Louisiana with its principle place of business in Baton Rouge, Louisiana.

5.

The property described in paragraph 1 above is believed to be contaminated by the oil and gas exploration and production activities. Defendants either caused this contamination, or are otherwise legally responsible for this contamination. Defendants' activities include the operation or construction of various oil and gas facilities, including but not limited to, pits, wells, sumps, pipelines, flowlines, tank batteries , wellheads, measuring facilities, separators, and injection facilities.

Specifically, defendants are liable for damage resulting from the operation of the wells identified on or in:

1)  the map attached hereto as Exhibit A, which shows the plaintiffs' property and the location, by symbol and serial number, of the wells located thereon; and

2)      the Operator History, attached hereto as Exhibit B, which shows as to each well: (a) the well

serial number; (b) the well name; (c) the operating company; and, (4) the dates of operation

and current status.

As shown more fully below, the above described defendants are liable for contamination located on

plaintiffs' property as shown by the GEM Survey, attached hereto as Exhibit C, which shows in

detail the location of contamination on plaintiffs' property, overlaid on aerial photographs showing

locations of historical pits and other facilities on plaintiffs' property

In summary, the above information identifies the wells at issue in this lawsuit by well serial

number, describes the location of these wells, the location and severity of the contamination on the

subject property, and the relationship of the defendants to the wells, the property, and the

contamination.  Defendants and entities or individuals who are not parties to this lawsuit may be in

possession of documentation evidencing leases, assignments, joint operating agreements, unit or

pooling agreements, farmout agreements, or other contracts that are not part of the public record.

Further discovery and testing may reveal additional or more severe contamination than is shown in

the attached exhibits.

6.

Defendants conducted, directed, controlled or participated in various oil and gas exploration

and production activities on the plaintiffs' property as operators, and/or working interest owners,

and/or mineral or surface lessees, and/or mineral or surface lease assignees, and/or mineral

sublessees, and/or servitude, executive interest or other mineral interest owners, and/or personal or

predial servitude owners.

7.

Since at least the 1930's the defendants have known that the disposal of oilfield wastes in

unlined earthen pits inevitably results in seepage, which contaminates both surface and subsurface

soils and waters.  Plaintiffs have suffered damages resulting from the improper disposal of oilfield

wastes in unlined earthen pits, which were constructed by the defendants on or near the property

during the course of oil and gas exploration and production activities.  The oilfield wastes deposited

in these pits include (but are not limited to) such substances as naturally occurring radioactive

material ("NORM"), produced water, drilling fluids, chlorides, hydrocarbons, and heavy metals. Also, leaks, spills, and other surface and subsurface discharges of these and other substances from wells, pipelines, tank batteries, gas plants and other equipment or facilities have further polluted the surface and subsurface of plaintiffs' property.

8.

NORM contains, *inter alia*, Radium$_{226}$ and Radium$_{228}$, which are very hazardous and toxic substances. Though these substances are "naturally occurring" at the depths from which oil and gas are produced, they become concentrated when brought to the surface during oil and gas production operations, where their presence can cause serious health related problems. Under Louisiana law, property contaminated with NORM cannot be transferred for unrestricted use.

9.

Produced water is a hazardous brew of various hydrocarbon compounds, metals, salt and radioactive substances. Studies of the chemical constituents of Louisiana produced water have revealed that all produced water discharges contain excess amounts of salt (up to 193 parts per thousand salt or 19.3%), and also contain volatile hydrocarbon compounds (including benzene, toluene, xylene and ethyl benzene), Polynuclear Aromatic Hydrocarbons ("PAHs or semi-volatiles) (including naphthalene, fluorene and phenanthrene), toxic heavy metals (including chromium, lead, mercury, arsenic, barium and zinc) and radium$_{226}$ and radium$_{228}$. All of these substances bioaccumulate and are acutely toxic to aquatic organisms at varying concentrations. Some of these substances (such as benzene and radium$_{226}$) have long been identified as human carcinogens.

10.

Drilling fluids are also highly toxic and hazardous. These fluids contain metals such as chromium, barium, and arsenic, as well as oil and other hydrocarbon fractions. Drilling fluids also contain toxic additives such as bactericides, slimicides, and acids. Further, drilling fluids have been demonstrated to be acutely toxic to aquatic organisms. In fact, a 1982 American Petroleum Institute Study documented the uptake of toxic heavy metals by plants near drilling mud pits.

11.

Other toxic and hazardous substances used by defendants in their day to day exploration and production activities include mercury, lead based compounds, chromium based algicides, hydrochloric acid, caustic soda, and various corrosion inhibitors.

12.

Defendants knew or should have known that their day to day operations in the Johnson Bayou Field would cause the soil, surface waters and groundwater of plaintiffs' property to be contaminated with the substances described in paragraphs 7 through 11 above. Rather than remove these substances during and after oil and gas exploration and production activities, defendants chose to conceal and cover up their contamination. This concealment and cover up was routine practice and has continued to date. The defendants' failure to responsibly and timely remove or remediate this toxic pollution in the soils and groundwater of plaintiffs' property has allowed the pollution to migrate and spread. Defendants' pollution has now permanently damaged the drinking water and other aquifers underlying the Johnson Bayou Field.

13.

Defendants knew for many years that they were disposing, storing, discharging, and otherwise releasing toxic poisons and pollutants onto and into the ground, groundwaters, and surface waters on or near plaintiffs' property. Yet, defendants failed to inform or warn plaintiffs concerning the extent, nature, cause and origin of this pollution. Defendants at no time warned or informed the plaintiffs that their disposal and discharge activities were hazardous to persons and property. Defendants knew and failed to disclose to plaintiffs that their wastes would not degrade or break down in the environment in the foreseeable future and that their presence in the subsurface would constitute an ongoing and continuing source of pollution and environmental damage for generations.

14.

Plaintiffs did not have actual or constructive knowledge of the pollution described in this petition until less than a year prior to the filing of this suit. Plaintiffs did not have knowledge of the defendants' fault, negligence, and breach of contract until less than a year prior to the filing of this suit. Plaintiffs did not have knowledge of the causal connection between the defendants' fault,

negligence and breach of contract and the pollution at issue until less than a year prior to the filing of this suit. Alternatively, defendants have engaged in acts that effectually have prevented plaintiffs from availing themselves of the causes of action alleged herein. These acts include fraud and misrepresentation intentionally committed by defendants (or their representatives) designed to hinder, impede or prevent plaintiffs from asserting their causes of action or to lull plaintiffs into a false sense of security. Such acts of fraud and misrepresentation specifically include: (1) burying, hiding or actively concealing pollution; (2) failing to inform plaintiffs that unlined earthen pits on their property seeped and leaked; (3) failing to inform plaintiffs that the use of unlined pits that seep and leak violate state regulation; (4) failing to inform plaintiffs that the failure to remove or remediate contamination caused by unlined earthen pits violates state regulation (5) failing to inform plaintiffs that pollution that migrates out of the confines of an unlined earthen pit will continue to migrate, spread and cause further damage to their property; (6) failing to inform plaintiffs of the hazardous and toxic nature of the oilfield pollution on their property; and, (7) failing to inform the plaintiffs that the oilfield practices followed by defendants would result in pollution and property damage. Due to defendants' concealment of the hazardous and toxic contamination that they deposited on plaintiffs' lands, and the role they played in causing this contamination, plaintiffs were denied access to the knowledge and facts needed to bring the claims alleged in this petition.

15.

Defendants' conduct constitutes negligence, which gives rise to liability under the provisions of La. Civ. Code art. 2315. Defendants knew or should have known that their conduct would cause property and other damages to plaintiffs. Defendants had a duty to protect plaintiffs and plaintiffs' property from the effects of the contamination and pollution described herein. Their violation of this duty proximately caused the damages described below. Further, as the defendants acquired knowledge that unlined pits would leak, and that the contamination left on plaintiffs' lands would continue to spread and migrate, defendants had the obligation to return to plaintiffs' lands to remediate the source or sources of the contamination, to stop the spread of the contamination, and to warn the plaintiffs that their land was contaminated. Defendants violated their own company policies and industry practice and custom, did not comply with the standards of conduct required in

the leases and other contracts applicable to the subject property, and failed to comply with applicable state regulation. Defendants are guilty of tortious conduct under private law by virtue of their violations of statewide and fieldwide orders and regulations.

16.

Defendants that acquired other corporations or other legal entities by merger, acquisition, or otherwise, or who otherwise assumed obligations under applicable leases or contacts, had a duty to remedy the past wrongs of those parties for whose fault or obligations they are legally responsible. To the extent that any defendant acquired the business or assets of a predecessor without a formal merger, said defendant is liable under the continuation doctrine of Louisiana law. In addition to their express or implied assumption of contractual obligations owed to plaintiffs, defendants are liable to plaintiffs under the provisions of Section 324A of the Restatement 2d, as interpreted by Louisiana jurisprudence. Under Section 324A, one or more of the defendants assumed duties owed by others to the plaintiffs to protect plaintiffs and their property from contamination and harm.

17.

Defendants are also guilty of a continuing tort. Defendants' acts or omissions have caused successive damages or an ongoing and cumulatively increasing deterioration of plaintiffs' property. The pollution caused by the defendants continues to migrate. The cause of the increasing damages to plaintiffs' land is the continuing failure of defendants to remove their pollution from the property. The cause of the damages suffered by plaintiffs is thus is a continuous cause giving rise to successive damages. Further, with regard to the contractual liability of the defendants, the express remediation obligation of any leases at issue, and covenants implied in any leases at issue, impose continuing remediation obligations on the lessees.

18.

Defendants are liable for the tortious breach of the contracts sued upon in this petition. These contracts may include mineral and surface leases, servitude agreements, assignments, mineral and surface subleases, right of way agreements, joint operating agreements, unit agreements, working interest agreements, use agreements, farmout agreements, and unit or pooling agreements.

19.

Defendants are also liable to plaintiffs under La. Civ. Code art. 667 of the Civil Code for the damages caused by their storage, discharge, and disposal of toxic and hazardous and toxic oil field waste on or adjacent to plaintiffs' property. La. Civ. Code art. 667 was amended by Act 1 of 1996, effective April 16, 1996. To the extent that defendants are deemed "proprietors" within the meaning of La. Civ. Code art. 667, said defendants are strictly liable to plaintiffs under La. Civ. Code art. 667 for damages sustained by the plaintiffs before April 16, 1996. Plaintiffs' claims under Article 667 for damages occurring on or after April 16, 1996, are governed by the amended version of Civil Code article 667. Furthermore, defendants are strictly liable to plaintiffs under the provisions of La. Civ. Code articles 2317 and 2322. At all times pertinent hereto, defendants had *garde* of the facilities and equipment that caused the pollution described herein. Those defendants who participated in the above described oil and gas operations by the acquisition of working interests had sufficient control to constitute *garde* under the provisions of La. Civ. Code art. 2317. On information and belief, the Joint Operating Agreements or unit agreements that governed the conduct of the oil and gas activities of the defendants show that the working interest owners or other participants in such agreements: (1) had the right to control operations conducted pursuant to the agreements; and, (2) held proportional ownership interests in the facilities and equipment which caused the pollution complained of herein. Such ownership gives rise to a presumption of *garde*. The acquisition of any leasehold or other ownership interest gives rise to a presumption of *garde*.

20.

Defendants' conduct of their oil and gas exploration and production activities and the associated discharge, disposal or storage of oil field waste on plaintiffs' property have created a continuing, ongoing and damaging nuisance to plaintiffs and plaintiffs' property. Further, the continued presence of oilfield wastes on the plaintiffs' lands constitutes a continuing trespass. The continuous and ongoing migration of this oil field waste is causing new and ever increasing damage to plaintiffs' property, and such damage will continue until such time as these wastes are removed and remediated.

21.

Defendants' conduct as described above constitutes a breach of the oil, gas, and mineral leases, surface leases, servitude agreements and other applicable contracts that covered the oil and gas activities described above.

22.

Plaintiffs herein bring suit under the mineral and surface leases and use agreements that apply to the property at issue in this case. To the extent that the law does not accord plaintiffs the right to sue as lessors (or as the assignees or successors of the lessors) under the applicable mineral leases or surface leases, plaintiffs assert claims as third party beneficiaries for damages for breach of said mineral leases or surface leases. Defendants have a contractual obligation under the applicable oil, gas, and mineral leases, and under the applicable surface or predial leases, and under La. Civ. Code arts. 2683, 2686, and 2692, to restore plaintiffs' property to its original condition. Defendants have failed to satisfy these obligations. Plaintiffs' property has been impacted by each defendant's use of said property under the applicable mineral and surface leases, and such property has not been restored to its original condition. For the breach of these oil, gas, mineral leases, and surface leases, the defendants are liable to plaintiffs for foreseeable and consequential damages occasioned by their failure to perform, as well as the cost of these proceedings and reasonable attorneys' fees to the extent such fees are allowed by contract or applicable law, such as La. R.S. 30:29. Further, plaintiffs claim damages for the violation of any personal servitude of use applicable to the property in accordance with the provisions of La. C.C. arts. 576, 577, and 645.

23.

Further, plaintiffs allege that they are third party beneficiaries of the assignments, subleases or other oilfield conveyancing instruments or contracts by which one or more of the defendants acquired an interest in the oilfield equipment, wells, and facilities at issue. As such, plaintiffs are entitled to sue defendants for damages under said assignments, subleases, or other oilfield conveyancing instruments or contracts. Defendants breached the third party beneficiary obligations owed by them under the said assignments, subleases, or other oilfield conveyancing instruments.

24.

Defendants who are assignees or sublessees of the mineral leases at issue are liable to plaintiffs under the provisions of article 128 and 129 of the Mineral Code.

25.

If any of the mineral leases subject to this suit have not expired, the remediation of contamination on the property subject to said existing leases would not interfere with, or have any effect on, any ongoing mineral operations. Defendants have failed to maintain and restore leased properties that are the subject of leases that are still in effect. This failure constitutes an active breach of said mineral leases. Further, upon information and belief, there are no leases at issue in this lawsuit that permit the lessee to postpone remediation of contaminated property until the end of the lease. Under the provisions of La. Civ. Code arts. 2683, 2686, and 2692, and applicable jurisprudence, defendants are obligated to remediate and restore the property at issue even though a mineral or surface lease may still be in effect.

26.

Each defendant has also breached those standards imposed by the Louisiana Civil Code and the Louisiana Mineral Code governing the conduct of prudent operators. The lease provisions of the Louisiana Civil Code and the Louisiana Mineral Code require Defendants to use plaintiffs' property as a prudent administrator and to restore plaintiffs' property to its original condition. Any implied obligations or covenants imposed on any lessee by the Civil Code or Mineral Code are binding on said lessee unless expressly renounced by the lease itself. Defendants have failed to act as prudent administrators, have failed to restore plaintiffs' property to its original condition, and have failed to discharge their obligations under the Civil Code and the Mineral Code. As a result, plaintiffs have suffered damages and are entitled to all remedies allowed under the Civil Code and Mineral Code.

27.

Plaintiffs specifically allege that defendants have violated the express and implied obligations of surfaces leases that apply to the property subject to this suit. Defendants' violation of these surface leases have caused damage to plaintiffs. Under said surface leases, defendants have the

obligation to maintain and restore the subject property. Plaintiffs did not obtain knowledge that defendants violated the surface leases at issue until less than one year prior to the filing of this suit.

28.

Defendants negligently and excessively used the property at issue during mineral operations. This negligent and excessive use violates the implied obligations of lessees under the provisions of the Louisiana Mineral Code, including without limitation, La. R.S. 31:122. Defendants who operate negligently and excessively under a mineral lease are obligated to restore the property to its original pre-lease condition.

29.

Defendants' actions in knowingly disposing of toxic and hazardous materials onto plaintiffs' property, in failing to clean up said pollution and stop its further migration, in storing their pollution on plaintiffs' properties, in allowing the migration of their pollution to offsite properties, and in failing to properly maintain their facilities where these toxic and hazardous materials were transported, handled, stored and disposed of, constitute wanton or reckless disregard for public safety in the storage, handling or transportation of hazardous or toxic substances. Defendants are therefore liable to plaintiffs for punitive and exemplary damages. At all times pertinent hereto, defendants had actual possession or control of the toxic and hazardous substances described above. With regard to plaintiffs' tort claims that arise under the provisions of former Civil Code article 2315.3, plaintiffs' claims for punitive damages are limited to acts or omissions of the defendants (or their predecessors or successors) that occurred during the period of applicability of article 2315.3.

In addition to the foregoing, plaintiffs allege that Statewide order 29-B was applicable during the period of applicability of former Civil Code article 2315.3. 43 LA ADC Pt XIX, § 101, *et seq.* This regulation requires the proper closure of pits. Statewide order 29-B has been held to be retroactive to activities occurring before its adoption. *Cockerham v. Atlantic Richfield Co.*, 615 So.2d 547, 549 (La.App. 3 Cir. 1993). The violation of a regulatory duty can give rise to tort liability. A failure to comply with applicable regulation is evidence of unreasonable care. Galligan and Maraist, *Louisiana Tort Law* (Lexis 2004), § 6.07. The defendants' violation of their regulatory obligations

under Statewide Order 29-B and other applicable regulations, and their failure to return to the field
to clean up their contamination, support a cause of action in tort for punitive damages.

30.

Defendants' storage and disposal of the aforementioned toxic and hazardous substances
constitutes an ultra hazardous activity for which defendants are strictly liable. This strict liability
is based on acts and omissions occurring before the amendment to La. Civ. Code art. 667 in 1996.
The amended version of La. Civ. Code art. 667 is applicable to the acts and omissions of defendants
occurring on or after the effective date of the 1996 amendment.

31.

Further, for an undetermined length of time, the defendants have stored toxic pollution and
waste in the groundwaters and soils underlying the plaintiffs' lands. Defendants have derived
substantial economic benefits from this storage in that their use of the subsurface of the plaintiffs'
lands has allowed them to avoid the substantial costs and expenses associated with the proper
disposal of this toxic pollution and waste. Thus, plaintiffs are entitled to the civil fruits derived from
defendants' trespass, for La. Civ. Code art. 486 provides that a possessor in bad faith is liable for the
"fruits he has gathered or their value subject to his claim for reimbursement of expenses."
Alternatively, even if storage costs are not technically deemed "civil fruits," plaintiffs are entitled
to the economic value of said storage, or the value of the rental of said storage.

32.

To the extent that defendants own mineral servitudes on the property, plaintiffs assert claims
for remediation under the provisions of Article 22 of the Mineral Code (La. R.S. 30:22). Upon
information and belief, such servitudes have been exercised. Defendants excessively used plaintiffs'
property subject to said servitudes. It was not "reasonably necessary" for defendants to use pits in
the conduct of their operations. And it was not "reasonably necessary" for defendants to use those
parts of the surface or subsurface of plaintiffs' property located outside of the confines of the pits
to store their wastes. Under Article 22, plaintiffs are entitled to restoration of their property to
original condition to the extent reasonably practicable at the earliest reasonable time. Plaintiffs are
entitled to this restoration remedy regardless of the fault or negligence of the servitude owner.

33.

Plaintiffs are third party beneficiaries of the joint operating and unit agreements and other operating agreements pertaining to the property in this suit. As third party beneficiaries, plaintiffs are entitled to claim damages arising from the breach of these agreements.

34.

As a direct result of the above described acts and omissions of the defendants, plaintiffs have suffered damages to their property, annoyance, discomfort and inconvenience occasioned by the nuisance created by defendants, diminution in the value of the property, and stigma damages. Further, in the alternative, and only if plaintiff has no other adequate remedy at law, defendants are liable for unjust enrichment damages, as the defendants have been unjustly enriched by their unauthorized use of plaintiffs' lands to store and dispose of toxic and hazardous contamination

35.

Due to the activities of defendants in polluting the soils, groundwater and surface waters of the property of the plaintiffs, and the continuing trespass of defendants resulting from the continued presence of contaminants in said soils, groundwater, and surface water, plaintiffs are entitled to a prohibitory and mandatory permanent injunction: (a) requiring that defendants remove the contamination they have caused to be deposited in the groundwater and soils underlying plaintiffs' lands, and (b) ordering the defendants to remove any contamination they have caused to be deposited in the groundwater and soils underlying the plaintiffs' lands.

36.

Plaintiffs are entitled to recover money damages equal to the cost to conduct a comprehensive and expedited environmental assessment of all present and yet unidentified pollution and contamination of their property.

37.

In summary, plaintiffs have stated causes of action in tort and separate causes of action for breach of contract under the Mineral Code and Civil Code, and for breach of implied obligations under the Mineral Code and Civil Code, and for the violation of the provisions of the Civil Code and Mineral Code, and are entitled to the following damages:

a. Sufficient funds to conduct a complete scientific analysis of the extent and nature of the contamination on their property associated with defendants' operation of waste pits, tank batteries, production and/or injection wells, pipelines, and other oil and gas related facilities and equipment;

b. The cost to restore the property to its pre-polluted original condition;

c. Punitive or exemplary damages;

d. An award of damages for defendants' unauthorized use of plaintiffs' land to store and dispose of their wastes without consent, or compensation to plaintiffs from time of placement to time of final removal;

e. An award of stigma damages for diminution in property value before, during and after restoration;

f. Any civil fruits derived from defendants' illegal trespass;

g. Damages for annoyance, discomfort and inconvenience occasioned by the nuisance created by defendants, including loss of full use and enjoyment of plaintiffs' property;

h. Where appropriate, land loss and subsidence damages, and the cost of backfilling of canals and other excavations;

i. Damages for loss of use of land and lost profits and income;

j. Attorneys' fees and expenses under La. R.S. 30:29, or under any contract that specifically provides for attorney fees and expenses.

38.

Defendants have not attempted to recover, handle, treat or dispose of any of the contamination at issue. It is expected that defendants will contend that natural attenuation is an acceptable method of remediating the contamination. The use of natural attenuation as a remediation method involves the <u>storage</u> of contamination at issue in the soils and groundwaters underlying the property of the plaintiff for a period of time sufficient to allow natural processes to eliminate such contamination. Plaintiffs specifically allege that the property at issue cannot be feasibly remediated by means of natural attenuation. Thus, to the extent that natural attenuation is used, or will be used, as a remediation method to remediate the property at issue, plaintiffs are entitled to reasonable compensation for the storage of waste on their property, including rental or economic value of said storage.

39.

Plaintiffs affirmatively allege that damages awarded by the court for remediation will be used to clean up the above described contamination. Specifically reserving any rights plaintiffs may have to claim that Act 312 of 2006 is unconstitutional as applied, plaintiffs show that under La. R.S. 30:29 (enacted by Act 312 of 2006), the judgment funds awarded to plaintiffs for remediation must be used, to the extent necessary, for the purpose of funding the most feasible plan adopted by the Court under the provisions of La. R.S. 30:29(C). Further, there is a valid reason to believe that any restoration award made by the court or the jury will be used to clean up the property. Plaintiffs are entitled to sufficient damages to restore their property as near as possible to its original condition. Plaintiffs have personal reasons for wishing to commit all sums awarded for remediation to clean up the affected property. However, even after the most feasible remediation possible is carried out, plaintiffs' property will nonetheless remain stigmatized. Further, to the extent plaintiffs' land is in close proximity to defendants' pollution, this land has been stigmatized by the acts of the defendants.

40.

Plaintiffs make no claim under the Environmental Quality Act, La. Rev. Stat. 30:2001 et seq, which is inapplicable to the claims asserted herein. Plaintiffs assert only those private causes of action accorded to them under the Louisiana Constitution and laws of the State of Louisiana. Plaintiffs have not pled, and will never at any time in the future plead, any claim or cause of action arising under federal law, and assert no such claims herein. To the extent any state law claims are preempted by federal law (either expressly or impliedly), such claims are not alleged herein. Plaintiffs herein expressly do not pursue any defendants or claims that have been discharged in bankruptcy, and if a party or parties has or intends to file for bankruptcy concerning any of the claims alleged herein, it is the express intention of plaintiffs not to pursue those claims or party or parties in this action, even if such party or parties have been inadvertently named as a defendant above.

41.

The provisions of La. R.S. 30:29 apply to this action, and notice will be furnished to the Attorney General and to Louisiana Department of Natural Resources pursuant thereto.

42.

Plaintiffs claim damages for the evaluation, cleanup, and remediation of any contamination or pollution that impacts or threatens to impact groundwater, regardless of classification or depth of such groundwater, and regardless of whether said groundwater is usable or unusable. Plaintiffs claim that they are entitled to restoration of any aquifers damaged by the pollution alleged herein.

43.

Plaintiffs assert that they have the right of action under La. R.S. 30:29, the Civil Code, and other applicable Louisiana statutory and jurisprudential law to seek cleanup of all of the environmental damage associated with their property, regardless of whether or not the source of said environmental damage is located on their property, and regardless of whether they owned their property at the time the damages occurred. Further, La. R.S. 30:29 contemplates that the feasible plan for remediation encompass all of the various plumes of contamination on their property, regardless of whether such plumes have migrated off of their property. To the extent that the execution of the "feasible plan" under La. R.S. 30:29 requires that remediation activities be performed on properties not owned or controlled by the plaintiffs, the court has jurisdiction in this case to order that defendants perform these remediation activities, as plaintiffs have a right of action under La. R.S. 30:29 to seek the implementation of the most feasible plan to protect the health, safety and welfare of the people. Further, Louisiana private law accords to a plaintiff landowner the right to seek remediation damages for the remediation of the property of a neighbor if the plaintiff landowner's property cannot effectively be remediated without remediating his neighbor's property. Plaintiffs' property cannot be effectively remediated unless the source of the contamination is removed, and plaintiffs are entitled to removal of the source of contamination even if such source happens to be located on the property of another.

44.

Defendants are liable to plaintiffs under the provisions of article 11 of the Mineral Code. Under article 11 of the mineral code, the plaintiffs as surface owners and defendants as owners of a mineral right (mineral lease or servitude) must exercise their respective rights with reasonable regard for those of the other. Defendants' failure to maintain and remediate the property at issue

constitutes a violation of the provisions of Article 11 of the mineral code. Defendants are strictly liable to plaintiffs under the provisions of Article 11.

45.

Defendants' breaches of the leases applicable to the plaintiffs property were substantial in nature. Under article 2686 of the Civil Code, plaintiffs are entitled to seek injunctive relief, dissolution, and damages.

46.

All defendants are joint tortfeasors and are liable to plaintiffs *in solido.*

47.

Plaintiffs show that article 2688 was enacted by Acts 2004, No. 821, §1, effective January 1, 2005. This codal article obligates a lessee to notify his lessor without delay when the property leased has been damaged or requires repair. When article 2688 became effective, the lessee defendants had an obligation to notify plaintiffs of the contamination on their property. No such notification was provided. Therefore, under the provisions of article 2688, plaintiffs are entitled to the damages they sustained as a result of defendants' failure to provide proper notification. Article 2688 is applicable to the mineral leases at issue by virtue of Article 2 of the Mineral Code. The failure of defendants to provide the notification required by article 2688 constitutes an active and substantial breach of the applicable mineral and surface leases. In addition, the failure to provide the notice required by article 2688 constitutes a tortious breach of the applicable leases.

48.

Also appearing herein as plaintiff is the Cameron Parish School Board, a public body authorized by applicable law to bring suit in its own name. Only to the extent that applicable law requires that any of the claims set forth above in paragraphs 1 through 47 of this petition be brought in the name of the Cameron Parish School Board, the Cameron Parish School Board appears herein as a party plaintiff to assert those particular claims. The Cameron Parish School Board reiterates that it makes no claim under the Conservation Act, LA R.S. 30:1 et seq. or the Environmental Quality Act, La. R.S. 30:2001 et seq., which are inapplicable to plaintiff's claims asserted herein. The Cameron Parish School Board asserts only those private causes of action accorded to it under

the Louisiana Constitution and laws of the State of Louisiana. The Cameron Parish School Board has not pled, and will never at any time in the future plead, any claim or cause of action arising under federal law, and asserts no such claims herein. To the extent any state law claims are preempted by federal law (either expressly or impliedly), such claims are not alleged herein. The Cameron Parish School Board herein expressly does not pursue any defendant or claims which have been discharged in bankruptcy, and if a party or parties has or intends to file for bankruptcy concerning any of the claims alleged herein, it is the express intention of the Cameron Parish School Board not to pursue those claims or party or parties in this action, even if such party or parties have been inadvertently named as a defendant above. Further, the Cameron Parish School Board does not make any judicial demand or claim for the recovery of damages for the evaluation and remediation of any contamination or pollution that impacts or threatens to impact "usable ground water," as such term is defined in R.S. 30:2015.1J.(1), as amended by Louisiana Act No. 1166 of 2003. The provisions of R.S. 30:2015.1 do not apply to this action. The Cameron Parish School Board reserves the right to amend this paragraph during the course of discovery.

49.

Plaintiffs demand a trial by jury.

WHEREFORE, plaintiffs pray that the defendants be cited to appear and answer this petition and that after due proceedings be had, that there be judgment entered herein as follows:

1.  Awarding plaintiffs all compensatory damages allowed by Louisiana law in an amount to be proven at trial, including payment of the costs to restore lands with identified pollution to its original unpolluted state, civil fruits resulting from defendants' illegal and bad faith trespass on plaintiffs' lands, storage damages, and other property damages, and damages for loss of use and lost profits and lost income, as well as damages for mental anguish and distress, annoyance, embarrassment and inconvenience, and, further, damages for land loss and subsidence, where appropriate;

2.  Awarding plaintiffs punitive and exemplary damages;

3.  Ordering defendants to pay plaintiffs sufficient funds so that plaintiffs may conduct a comprehensive and expedited environmental assessment of plaintiffs' land to identify all hidden or not yet identified pollution;

4.  Awarding plaintiffs all costs of this suit and for legal interest therein for any amount awarded from the date of judicial demand until paid; and further awarding plaintiffs judicial interest on all contract claims from the date of breach;

5.   Awarding plaintiffs stigma damages for diminution in property value before and after restoration;

6.   Ordering a mandatory and prohibitory injunction to restore plaintiffs' property to its precontaminated condition and to prevent the migration and spread of toxic and hazardous substances onto plaintiffs' property;

7.   Approving a feasible remediation plan under La. R.S. 30:29 that complies with all applicable state regulations, without variances therefrom, including Statewide order 29-B and state regulations requiring remediation of usable groundwater to drinking water standards;

8.   Approving a feasible remediation plan under La. R.S. 30:29 that protects the health, safety, and welfare of the people of Louisiana;

9.   Approving a feasible remediation plan under La. R.S. 30:29 that protects and replenishes the natural resources of the state;

10.  Awarding all damages allowed under Subsection H of La. R.S. 30:29;

11   For all just and equitable relief;

12.  Alternatively, for all appropriate unjust enrichment damages as provided by Louisiana law; and,

13.  For all damages as are reasonable in the premises.

Respectfully submitted,

TALBOT, CARMOUCHE & MARCELLO
Post Office Box 759
Gonzales, LA 70707-0759
Telephone: (225) 644-7777;  Fax: (225) 644-5226

Donald T. Carmouche, Bar #2226
Victor L. Marcello, Bar # 9252
John H. Carmouche, Bar #22294
William R. Coenen, III, Bar #27410
John S. DuPont, III, Bar #26271
Brian T. Carmouche, Bar #30430

Chad E. Mudd
David P. Bruchhaus
M. Keith Prudhomme
MUDD & BRUCHHAUS, L.L.C.
410 E. College St.
Lake Charles LA 70605

PLEASE SERVE:

ASPECT ENERGY, LLC
through its agent:
CT Corporation System
5615 Corporate Boulevard, Suite 400B
Baton Rouge, LA 70808

See next page for additional service information

**AZIMUTH ENERGY, LLC**
through its agent:
CT Corporation System
5615 Corporate Boulevard, Suite 400B
Baton Rouge, LA 70808

**CONOCOPHILLIPS COMPANY**
**as successor to Continental Oil Company**
through its agent:
United States Corporation Company
320 Somerulos Street
Baton Rouge, LA 70802

**CONOCOPHILLIPS COMPANY**
**as successor to General American Oil Company**
through its agent:
United States Corporation Company
320 Somerulos Street
Baton Rouge, LA 70802

**CONOCOPHILLIPS COMPANY**
**as successor to Phillips Petroleum Company**
through its agent:
United States Corporation Company
320 Somerulos Street
Baton Rouge, LA 70802


***Please serve through the Louisiana Long Arm Statute:***

**DUNDEE PETROLEUM, INC.**
through its agent:
Royce A. Scott
419 Graham Street
Tuscola, TX 79562

EXHIBIT B-2

38TH JUDICIAL DISTRICT COURT FOR THE PARISH OF CAMERON

STATE OF LOUISIANA

DOCKET NO. 10-18673

STATE OF LOUISIANA AND THE CAMERON PARISH SCHOOL BOARD

VERSUS

ASPECT ENERGY, LLC, AZIMUTH ENERGY, LLC,
CONOCOPHILLIPS COMPANY, AND DUNDEE PETROLEUM, INC.

FILED: _____    _____

DEPUTY CLERK OF COURT

### FIRST AMENDING PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, come plaintiffs, State of Louisiana and

The Cameron Parish School Board to amend their original petition for damages as follows:

### I.  Amendment to Paragraph 2

Paragraph 2 is amended to include the following sentences at the end of the paragraph:

"2.

* * * *

The Cameron Parish School Board has custodial authority over Section 16 lands in Cameron Parish

and not actual ownership.  The State of Louisiana owns 100% of this Section 16 land at issue in this

case and as properly named as a party plaintiff under authority of La. R.S. 41:963.  The State of

Louisiana and the Cameron Parish School Board are both real parties in interest in this case."

### II.  Amendment to Paragraph 3

Paragraph 3 is amended as follows:

"3.

Plaintiff, the State of Louisiana is the owner of the aforementioned property, which is

contaminated by the oil and gas activities conducted or controlled by one or more of the defendants.

The Cameron Parish School Board is the custodian of the aforementioned property and is:  (1) the

lessor or third-party beneficiary mineral and/or surface leases with defendants, and/or (2) a servitude

owner who has the right to sue for remediation damages under the Mineral Code.  Both the State of

Louisiana and the Cameron Parish School Board are parties who possess the right of action to file

this lawsuit under Louisiana law."

### III.  Amendment to Paragraph 5

Paragraph 5 is amended to add the following exhibits:

3)  a map depicting the sampling locations performed by ICON Environmental, attached hereto as Exhibit D;

4)  an aerial photograph depicting the well locations and the environmental boring testing locations performed by ICON Environmental, attached hereto as Exhibit E;

5)  an aerial photograph depicting the contamination found and the boring locations of ICON Environmental sampling locations, attached hereto as Exhibit F;

6)  an aerial photograph depicting the contamination found and the boring locations of ICON Environmental sampling locations, attached hereto as Exhibit G; and

7)  a groundwater data summary table of the sampling locations as identified in Exhibit D, attached hereto as Exhibit H.

### IV.  Amendment to Paragraph 6

Paragraph 6 is amended to add a sentence at the end of the paragraph to read as follows:

"See attached lease summary (Exhibit I) identifying the instrument number, book and page number, date of the instrument, the grantor and grantee, and a description of the type of instrument."

### V.  New Paragraph 6.1

New Paragraph 6.1 is inserted after Paragraph 6 and reads as follows:

"6.1

Continental Oil Company, the successor to defendant ConocoPhillips Company (hereafter "Conoco"), commenced oil and gas operations on the plaintiffs' property in 1945 and continued such operations through successor companies (including General American Oil Company, Phillips Oil Company, and Phillips Petroleum Company– all predecessors of Conoco) until approximately 1994, when it sold the field to a third party.  During this 49 year period, Conoco operated numerous oil and gas wells, tank batteries, pits, pipelines and related equipment on the plaintiffs' property.  Conoco's

oil field operations were conducted under a series of oil, gas, and mineral leases, including but not limited to the following:

- Lease #1 - Instrument #48743 (Book 58, pg. 263) from the Cameron Parish School Board to Continental Oil Company dated February 7, 1945.

- Lease #2 - Instrument #53542 (Book 68, pg. 34) from the Cameron Parish School Board to Continental Oil Company dated February 2, 1948.

- Lease #3 - Instrument #73509 (Book 112, pg. 323) from the Cameron Parish School Board to Stanolind Oil and Gas Company. This lease was assigned to General American Oil Company of Texas on April 27, 1960.

A summary of each of these leases and other instruments affecting the property is attached hereto as Exhibit J. Copies of the leases themselves are attached hereto as Exhibit K. Copies of the assignments and other documents associated with said leases may be viewed at the office of undersigned counsel at a mutually convenient time and date. Conoco's predecessors operated a number of pits, tank batteries and other equipment and facilities on and adjacent plaintiffs' property, as shown by the red circles in the aerial photographs attached hereto as Exhibit L. Each of these facilities caused damage to plaintiffs' property.

Azimuth Energy, L.L.C. ("Azimuth") commenced operations on plaintiffs' property beginning in 2004, after acquiring rights in Lease #'s 2 and 3 by assignment from a third party in 2003. Azimuth retained ownership of Lease #'s 2 and 3 until 2009, when it assigned said leases to a third party. However, from 2006-2009, Azimuth allowed operations to be conducted on plaintiffs' property through Aspect Energy, L.L.C. ("Aspect"), an entity affiliated with Azimuth. Between 2004 and 2009, Azimuth and Aspect operated substantially the same wells that had been historically operated by Conoco or its predecessors, as can be seen from the operator history attached as Exhibit B to the original petition. It should be noted that the operator history attached as Exhibit B to plaintiffs' original petition contains latitude and longitude coordinates and a section map for each well so that defendants can easily reference the precise location of the wells in question.

Defendant Dundee Petroleum operated 3 wells on plaintiffs' property from 1978-1983, as set forth in the operator history attached to the original petition as Exhibit B. On information and

belief, Dundee performed such operations either as a contract operator or pursuant to a farmout agreement from one of Conoco's predecessors.

Plaintiffs affirmatively allege that the operations of Conoco and its predecessors, Azimuth, Aspect, and Dundee contaminated and caused damage to the property at issue in this litigation. These damages were caused by the use of leaky tanks, flowlines, well heads, sumps, treatment units, pits, which seeped and leaked their contents to the surface and subsurface, and the like.  Defendants are thus liable to plaintiffs in tort and pursuant to other legal theories described herein.  Defendants are also liable to plaintiffs by virtue of their breach of the aforementioned leases, which do not allow contamination to be deposited on the property or remain on the property or in the groundwaters for any length of time.   The contamination caused by Conoco is commingled with the contamination caused by Azimuth, Aspect, and Dundee.  Each of these defendants contributed to the contamination on plaintiffs' property during the time frames during which they conducted their operations, as described above.  However, at no time did Conoco, Azimuth, Aspect, or Dundee inform plaintiffs that their waste products from their oil and gas operations had made their way into the soils and groundwaters on plaintiffs' property, thus concealing from plaintiffs the fact that the property was contaminated."

### VI.  Amendment to Paragraph 7

Paragraph 7 is amended to add the following text at the end of the paragraph to read as follows:

"Plaintiffs are in possession of thousands of documents indicating the knowledge alleged in paragraph 7.  The defendants are welcome to come to the office of undersigned counsel to view the documents at a convenient time and date."

### VII.  Amendment to Paragraph 18

Paragraph 18 is amended to add a sentence at the end of the paragraph to read as follows:

"The leases that have been breached are referenced in the attached Exhibits I, J, and K."

### VIII.  Amendment to Paragraph 20

Paragraph 20 is amended to add the following text to the end of the paragraph to read as follows:

"The defendants have allowed equipment and pits to remain on the property to date.  This type of equipment continues to leak toxic chemicals into the soil and groundwater.  The pits acted as a tank where toxic chemicals were stored and the tank continues to allow toxic chemicals to seep on a daily basis into the soil and groundwater.  The pipe identified continues to deteriorate and allow NORM and other chemicals to seep into the soil and groundwater.  Also, the toxic chemicals continue on a daily basis to kill vegetation and animals located on the property.  (See photographs attached as Exhibit M).  The abandoned wells continue to be sources on a daily basis of vertical migration and up-coning of toxic chemicals due to prior salt water disposal practices and waste handling practices."

### IX.  Amendment to Paragraph 21

Paragraph 21 is amended to add the following sentence at the end of the paragraph to read as follows:

See lease summaries attached as Exhibits I and J and the leases themselves attached as Exhibit K.

### X.  Amendment to Paragraph 29

Paragraph 29 is amended to insert the following sentence at the end of the first paragraph: "Plaintiffs acknowledge that the operations of Azimuth and Aspect occurred after the period of applicability of La. C.C. art. 2315.3, and thus plaintiffs make no claim for punitive damages with respect to Azimuth and Aspect.  Plaintiffs do make claims for punitive damages with respect to Conoco and its predecessors and as to Dundee."

### XI.  Amendment to Paragraph 30

Paragraph 30 is amended to add the following text at the end of the paragraph to read as follows:

"See attached groundwater summary attached as Exhibit H.  The groundwater samples indicate an excessive amount of toxic chemicals such as arsenic, barium, selenium, strontium,

chlorides, TPH-diesel, TPH-oil, benzene, radioactive materials, and other chemicals that will be tested for in the near future. Any and all data will be supplemented through discovery and through expert reports and will be furnished to the LDNR in accordance with La. R.S. 30:29."

### XII. New Paragraph 50

New Paragraph 50 is to be inserted to follow Paragraph 49 and reads as follows:

"50.

Any and all contamination that can be proven that occurred prior to any sales point or gathering facility is alleged to be excluded from any and all Act 312 proceedings. Also, if any contamination is commingled with contamination that occurred after the sales point or custody transfer, that contamination is alleged to be outside of Act 312."

### XIII. New Paragraph 51

New Paragraph 51 is to be inserted to follow new Paragraph 50 and reads as follows:

"51.

Plaintiffs further allege that defendants have trespassed on plaintiffs' property by disposing of oilfield wastes on plaintiffs' property that originated from properties not owned by plaintiffs. The activities giving rise to such trespass claims include, without limitation, the disposal of wastes on the Cameron Parish School Board property that originated from oil and gas operations on Sections 15 and 17, Township 15 South, Range 4 East. Defendants' actions in this regard occurred without any authority or permission from the State of Louisiana or the Cameron Parish School Board."

### XIV. Incorporation of Prior Allegations and Claims

Plaintiffs renew and reiterate all of the allegations (as amended herein) and the prayer of the original petition for damages, which except as amended, shall remain unchanged.

WHEREFORE, petitioners reiterate the prayer of their original petition and pray that there be judgment herein in their favor and against the defendants, *in solido,* for all damages as are reasonable in the premises, together with legal interest and costs.

By Attorneys:

TALBOT, CARMOUCHE & MARCELLO
17405 Perkins Road
Baton Rouge, LA  70810
Telephone No. 225-400-9991
Fax No. 225-448-2668

Donald T. Carmouche, Bar #2226
Victor L. Marcello, Bar # 9252
John H. Carmouche, Bar #22294
William R. Coenen, III, Bar#27410
John S. DuPont, III, Bar #26271
Brian T. Carmouche, Bar #30430
Ross J. Donnes, Bar #33098
D. Adele Owen, Bar #21001

Chad E. Mudd, Bar #25188
MUDD & BRUCHHAUS, LLC
410 E. College Street
Lake Charles, LA 70605
Telephone No. 337-562-2327
Fax No. 337-562-2391

*Attorneys for Plaintiffs*


**PLEASE SERVE THE FIRST**
**AMENDING PETITION FOR DAMAGES:**

**ASPECT ENERGY, LLC**
**AZIMUTH ENERGY, LLC**
through their attorneys of record:
Donald R. Abaunza
Joseph I. Giarrusso III
LISKOW & LEWIS
One Shell Square
701 Poydras St., Suite 5000
New Orleans, LA 70139-5099

**CONOCOPHILLIPS COMPANY**
through its attorneys of record:
Gary J. Russo
Megan E. Donohue
JONES, WALKER, WAECHTER,
POITEVENT, CARRÈRE & DENÈGRE
600 Jefferson, Ste. 1600
P.O. Drawer 3408
Lafayette, LA 70502-3408

38TH JUDICIAL DISTRICT COURT FOR THE PARISH OF CAMERON

STATE OF LOUISIANA

DOCKET NO. 10-18673

STATE OF LOUISIANA AND THE CAMERON PARISH SCHOOL BOARD

VERSUS

ASPECT ENERGY, LLC, AZIMUTH ENERGY, LLC,
CONOCOPHILLIPS COMPANY, AND DUNDEE PETROLEUM, INC.

---

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and forgoing document has been forwarded to the following counsel of record by placing same in the United States mail, postage prepaid, and properly addressed.

Donald R. Abaunza
Joseph I. Giarrusso III
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, LA 70139
*Attorneys for Aspect Energy, LLC and
Azimuth Energy, LLC*

William D. Lampton
JONES, WALKER, WAECHTER,
POITEVENT, CARRÈRE & DENÈGRE
855 United Plaza Blvd., 5th Floor
Baton Rouge, LA 70809
*Attorney for ConocoPhillips Company*

Joshua A. Norris
Michael A. Chernekoff
JONES, WALKER, WAECHTER,
POITEVENT, CARRÈRE & DENÈGRE
JPMorgan Chase Tower
600 Travis Street, Ste. 6601
Houston, TX 77002
*Attorneys for ConocoPhillips Company*

Gary J. Russo
Megan E. Donohue
JONES, WALKER, WAECHTER,
POITEVENT, CARRÈRE & DENÈGRE
600 Jefferson, Ste. 1600
P.O. Drawer 3408
Lafayette, LA 70502-3408
*Attorneys for ConocoPhillips Company*

Baton Rouge, Louisiana this 21st day of February, 2011.

John H. Carmouche

EXHIBIT B-3

38TH JUDICIAL DISTRICT COURT FOR THE PARISH OF CAMERON

STATE OF LOUISIANA

DOCKET NO. 10-18673

STATE OF LOUISIANA AND THE CAMERON PARISH SCHOOL BOARD

VS.

ASPECT ENERGY, LLC, AZIMUTH ENERGY, LLC, CONOCOPHILLIPS COMPANY,
DUNDEE PETROLEU, INC.

October 3, 2012

FILED _____    DEPUTY CLERK OF COURT

### PLAINTIFFS' SECOND SUPPLEMENTAL AND AMENDING PETITION

NOW INTO COURT, through undersigned counsel, comes the Cameron Parish School Board, individually and on behalf of the State of Louisiana as per La. R.S. 41:961, *et seq*, to file the Second Supplemental and Amending Petition as follows:

**I.    Amendment to Paragraph 4**

Paragraph 4 is hereby amended to add additional defendants, as follows:

"4.

* * *

g.    Noble Energy, Inc. ("Noble"), a foreign corporation that is authorized to do and is doing business in the State of Louisiana and who maintains is principal Louisiana business establishment at 5615 Corporate Blvd., Suite 400B, Baton Rouge, LA. Noble is a successor to Elysium Energy, LLC ("Elysium Energy"). Elysium Energy is a successor to Alma Energy Corporation ("Alma") and Equinox Oil Company, Inc. ("Equinox").

h.    Texas Petroleum Investment Company ("TPIC"), a foreign corporation that is authorized to do and is doing business in the State of Louisiana and maintains its principal Louisiana business establishment at 1313 W. Pinhook Rd., Lafayette, LA 70503."

## II.    New Paragraphs 6.2 -6.17

New Paragraph 6.2 is added after Paragraph 6.1 and reads as follows:

"6.2

Conoco"'s predecessors held an interest in two oil, gas, and mineral leases of the Property: (1) from 1960 to 1994 Conoco's predecessors General American Oil Company, Philips Oil Company, and Phillips Petroleum Company held an interest in a 1956 oil, gas, and mineral lease from the Cameron Parish School Board to Stanolind Oil and Gas Company that covers the northern half and southwestern quarter of the Property (the "Stanolind Lease"); and (2) from 1948 to 1977, Conoco's predecessor, Continental Oil Company, held an interest in a 1948 oil, gas, and mineral lease from the Cameron Parish School Board to Continental Oil Company that covers the southeastern quarter of the Property (the "Continental Lease").

6.3

On January 1, 1994, Conoco's predecessor assigned all of its interest in the Stanolind Lease to Alma and TPIC.

6.4

On April 1, 1996, Alma and TPIC also acquired an interest in the Continental Lease.

6.5.

Alma and TPIC elected Equinox as the operator for the wells and facilities on the Property. Equinox served as the operator on the Property from 1994 until 2000.

6.6

In 2000, Noble's predecessor, Elysium Energy, acquired Alma and Equinox. As part of Elysium Energy's acquisition of Alma and Equinox, on November 28, 2000, Alma assigned its interest in both the Stanolind Lease and the Continental Lease to Elysium Energy.

6.7

Elysium Energy operated the wells and facilities on the Property from 2000 until 2004.

6.8

TPIC held its interest in the Stanolind Lease and the Continental Lease until September 1, 2009.

6.9

On February 27, 1995, more than a year after Conoco's predecessor assigned its interest in the Property to Alma and TPIC, a serious blowout of the CPSB #26 well occurred during Equinox's operations on the Property (the "Equinox Blowout"). The Equinox Blowout lasted for more than a month, and Equinox was forced to dis several large pits to hold the massive amounts of produced water and condensate generated from the blowout.

6.10

Alma and TPIC were aware of the Equinox Blowout and participated, along with Equinox, in the efforts to stop the Equinox Blowout.

6.11

The Equinox Blowout caused extensive damage to the plaintiffs' Property.

6.12

Furthermore, Equinox, Alma, and TPIC failed to properly stop the blowout, failed to properly drill the relief well used to kill the blowout, and failed to adequately remediate the damage caused by the blowout. This failure to properly respond to the Equinox Blowout increased the damage caused by the blowout.

6.13

Also, documents recently produced by other parties during discovery in this case have revealed that Elysium Energy's operations caused additional environmental damage to the Property, including but not limited to: chronic discharges of produced water and oil at the Johnson Bayou Central Tank Battery; leaking and corroded tanks at the Johnson Bayou Tank Battery; oil stained soil and stressed vegetation from leaking compressors; spills and releases on the Property; and a failure to report spills and releases that occurred on the Property.

6.14

TPIC held an interest in the Property throughout the period of Equinox and Elysium Energy's operations on the Property. TPIC was aware of and participated in decisions regarding these operations, including but not limited to the response to the Equinox Blowout.

6.15

The operations of Equinox, including the Equinox Blowout, and the operations of Elysium Energy caused significant damage to the Property. Noble and TPIC are responsible for the operations of Equinox and Elysium.

6.16

Noble's predecessors and TPIC are sublessees/assignees of the aforementioned mineral leases and agreements. These agreements including, but may not be limited to, the Stanolind Lease and the Continental Lease.

6.17

Under the terms of the foregoing agreements, and pursuant to the Mineral Code, the provisions and obligations set forth in the agreements are binding on Noble and TPIC."

**III.    Incorporation by Reference of Prior Allegations and Claims**

Plaintiffs renew and reiterate all of the allegations (as amended herein) and the prayer of the original petition for damages, which except as amended, shall remain unchanged.

WHEREFORE, plaintiffs reiterate the prayer of their original petition and pray that there be judgment herein in their favor and against the defendants, *in solido*, for all damages as are reasonable in the premises, together with legal interest and costs.

Respectfully submitted,

Chad E. Mudd, Bar #25188
David P. Bruchhaus, Bar #24326
M. Keith Prudhomme, Bar #14336
MUDD & BRUCHHAUS, LLC
410 E. College Street
Lake Charles, LA 70605
Telephone (337) 562-2327; Fax: (337) 562-2391

Donald T. Carmouche, Bar #2226
Victor L. Marcello, Bar # 9252
John H. Carmouche, Bar #22294
William R. Coenen, III, Bar #27410
Brian T. Carmouche, Bar #30430
TALBOT, CARMOUCHE & MARCELLO
17405 Perkins Road
Baton Rouge, LA 70810
Telephone: (225) 400-9991; Fax: (225) 448-2568
*Attorneys for Plaintiffs*

**PLEASE SERVE THE SECOND SUPPLEMENTAL AND
AMENDING PETITION FOR DAMAGES:**

**ASPECT ENERGY, LLC
AZIMUTH ENERGY, LLC**
through their attorneys of record:
Donald R. Abaunza
Joseph I. Giarrusso III
LISKOW & LEWIS
One Shell Square
701 Poydras St., Suite 5000
New Orleans, LA 70139-5099

**CONOCOPHILLIPS COMPANY**
through its attorneys of record:
Gary J. Russo
Megan E. Donohue
JONES, WALKER, WAECHTER,
POITEVENT, CARRÈRE & DENÈGRE
600 Jefferson, Ste. 1600
P.O. Drawer 3408
Lafayette, LA 70502-3408

**NOBLE ENERGY, INC.**
c/o CT Corporation System (registered agent)
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

**TEXAS PETROLEUM INVESTMENT COMPANY**
c/o Patrick S. Ottinger (registered agent)
1313 W. Pinhook Rd.
Lafayette, LA 70503

**38TH JUDICIAL DISTRICT COURT FOR THE PARISH OF CAMERON**

**STATE OF LOUISIANA**

**DOCKET NO. 10-18673**

**STATE OF LOUISIANA AND THE CAMERON PARISH SCHOOL BOARD**

**VERSUS**

**ASPECT ENERGY, LLC, AZIMUTH ENERGY, LLC,**
**CONOCOPHILLIPS COMPANY, AND DUNDEE PETROLEUM, INC.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and forgoing document has been forwarded to the following counsel of record by facsimile transmission, electronic mail, and/or by placing same in the United States mail, postage prepaid, and properly addressed.

Philip S. Beck
BARTLIT BECK HERMAN
PALENCHAR & SCOTT LLP
54 W. Hubbard St.
Chicago, IL 60654
*Pro Hac Vice Counsel for*
*ConocoPhillips Company*

James P. Doré
Alan J. Berteau
Amy D. Berret
R. Benn Vincent
KEAN MILLER LLP
II City Plaza
400 Convention St., Ste. 700
P.O. Box 3513
Baton Rouge, LA 70821-3513
*Attorneys for Aspect Energy, LLC and*
*Azimuth Energy, LLC*

Sean Christopher Grimsley
BARTLIT BECK HERMAN
PALENCHAR & SCOTT LLP
1899 Wynkoop St., Ste. 800
Denver, CO 80202
*Pro Hac Vice Counsel for*
*ConocoPhillips Company*

William D. Lampton
JONES, WALKER, WAECHTER,
POITEVENT, CARRÈRE & DENÈGRE
855 United Plaza Blvd., 5th Floor
Baton Rouge, LA 70809
*Attorney for ConocoPhillips Company*

Joshua A. Norris
Michael A. Chernekoff
JONES, WALKER, WAECHTER,
POITEVENT, CARRÈRE & DENÈGRE
JPMorgan Chase Tower
600 Travis Street, Ste. 6601
Houston, TX 77002
*Attorneys for ConocoPhillips Company*

Gary J. Russo
Carmen M. Rodriguez
Megan E. Donohue
JONES, WALKER, WAECHTER,
POITEVENT, CARRÈRE & DENÈGRE
600 Jefferson, Ste. 1600
P.O. Drawer 3408
Lafayette, LA 70502-3408
*Attorneys for ConocoPhillips Company*

Baton Rouge, Louisiana this 3RD day of October, 2012

_____
M. KEITH PRUDHOMME